McCALEB, Justice.
The original plaintiff, Mrs. Iselle Hebert Breaux, brought this suit against her son, *798 Elmo J. Breaux, to set aside and annul a certain act of sale in authentic form, dated May 27, 1943, wherein she purported to convey to him, for a stated consideration of $1400 cash, three-fourths of a tract of land fronting on Bayou Lafourche which she had acquired as legatee under the last will and testament of her aunt, Mrs. Robert Champagne. It is alleged in the petition that the cash consideration set forth in the act of sale was a mere subterfuge as no consideration was paid; that the conveyance was the result of a fradulent scheme of defendant to deceive the public and plaintiff’s other children to enable her to donate the property in disguise, and that it is void and should be set aside because, among other things, the donation is violative of Article 1533 of the Civil Code, in that it is provided in the act that plaintiff was to retain the use, enjoyment and occupancy of the property for the rest of her life.
The defendant' admitted in his answer that neither the stated consideration of .$1400 nor any .other monetary consideration was paid by him to his mother but set forth that the act was nonetheless valid in that it was supported by a natural obligation on the part of his mother to convey the property to him as soon as he reached twenty-one years of age; he averred that this obligation resulted from an oral .promise made by his mother to his Godmother, Mrs. Robert Champagne, at the time the latter executed a last will and testament in ■favor of his mother, bequeathing to her the real estate herein involved, subject to the condition that she would convey title to him when he became of age. Wherefore, he prayed that the alleged natural obligation be deemed a good and sufficient consideration to support the conveyance and that the action be dismissed.
Subsequently, by amended petition, plaintiff propounded interrogatories on facts and articles to the defendant relative to the nonexistence of a consideration for the sale. Defendant responded, reiterating his previous admission that there was no monetary consideration, but re-asserting the position taken by him in his answer that the convey-, anee was made by his mother in discharge of an alleged natural obligation which was a valid consideration for the deed.
Prior to the trial, Mrs. Breaux died leaving nine children, including defendant, as her sole and only heirs. After filing affidavits of their heirship, the brothers and sisters of defendant, eight in number, were substituted as parties plaintiff and the case proceeded to trial on the issues previously pleaded.
After 'hearing the .evidence, the trial judge, believing that defendant’s position was substantiated in fact and law, dismissed the suit. Plaintiffs have appealed.
During the trial, counsel for plaintiffs made timely objection to the introduction by defendant of parol evidence in support of his allegations that there was a natural obligation on the part of his mother to *800 transfer the land to him. This objection was based on the ground that oral evidence’ is inadmissible to vary or contradict the recitals of an authentic act. Articles 2236 and 2276 of the Civil Code. The rule is so firmly established that parol evidence cannot he received, as between the contracting parties, to show a consideration other than that stated in the act that citation of authority is ' hardly necessary. The Code speaks for itself. See Articles 2236, 2237, 2238, 2239, 2275, and 2276.
In the case of Robinson v. Britton, 137 La. 863, 69 So. 282, the Court, after remarking that the codal articles were so plain that the matter was not open to serious discussion, declared that Article 1900, which provides that a different consideration from that stated in the contract can always be shown, is without application to authentic acts where the suit is between the contracting parties, their heirs or assigns. Accordingly, in the absence of allegations of fraud or error, the recitals of an authentic act cannot be varied or contradicted by parol testimony. The only method by which either party to the contract can show that no consideration, or a different one than that specified was given, is by counter letter or by answer of the opposing party to interrogatories on facts and articles. Templet v. Babbitt, 198 La. 810, 5 So.2d 13.
But this rule affords no reason for concluding that plaintiffs’ objection was well founded in the instant case. On the contrary; it is wholly inapplicable and avails plaintiffs nothing for, here, they are the parties attacking the authentic Act and they seek to probe the conscience of defendant by propounding interrogatories on facts and articles. The answer of the defendant to these interrogatories is not consider-ed under the law as parol but rather as. written evidence, thus performing the same, office as a -counter letter. Hoover v. Miller, 6 La.Ann. 204, and Semere v. Semere, 10 La.Ann. 704. And parol evidence was, of course, admissible to sustain the consideration pleaded by defendant in his. answer to the interrogatories on facts and articles, as such proof was in support of the written title as amended by his answer.
An examination of the parol evidence-offered by defendant to sustain his plea, that his mother transferred the property-in contest in conformity with a verbal, promise to his Godmother, Mrs. Champagne, is abundant and wholly sufficient: to support a ruling that Mrs. Breaux understood it to be the intention of Mrs. Champagne that the property was “to go”' to defendant after the former’s death. Defendant and his wife testified that the former’s mother told them on numerous occasions that it was the desire of Mrs. Champagne that the property be transferred to defendant when he became of' age. However, none of the other witnesses, either for defendant or plaintiffs,, corroborated the statement that defendant was to obtain the property from his mother *802 when he became of age. They say that Mrs. Breaux informed them that it was Mrs. Champagne’s desire that the property “would go” to defendant at his mother’s death.
It is unnecessary, however, for us to determine the exact understanding between Mrs. Breaux and Mrs. Champagne forasmuch as. the evidence is ample to warrant the conclusion that Mrs. Champagne, prior to or at the time she bequeathed the entire tract to Mrs. Breaux by her last will and testament, either requested or had an understanding with Mrs. Breaux that the property would eventually be transferred by the latter to the defendant before her death. This being so, the important question arises whether such a promise by the donee under a last will and testament imposes upon such donee a natural obligation to carry out the desires of the testatrix.
Initially, it is manifest that the verbal understanding between Mrs. Breaux and Mrs. Champagne was tantamount to the creation of either a fidei commissum or a substitution reprobated by Article 1520 of the Civil Code, as it was a devise to Mrs. Breaux of a life estate in the property with the direction that it be thereafter transferred to defendant. And it is of no moment to the decision in the case whether the agreement be viewed as a trust in favor of defendant (and therefore a fidei commissum) or as a life estate in Mrs. Breaux with reversion of the property to. defendant at her death (and hence a prohibited substitution), for the simple reason that, if the verbal bequest to defendant had been expressed in the will, either the entire bequest or that part creating a fidei commissum would have been void.[1] Succession of Reilly, 136 La. 347, 67 So. 27.
Our inquiry extends only to a determination of whether the creation of a fidei commissum or a prohibited substitution imposes upon the donee a natural obligation to execute the wishes of the testator. Article 1757 of the Code enumerates three kinds of obligations, — imperfect, natural, and civil or perfect. It defines an imperfect obligation to be one operating “only on the moral sense,” without being enforceable in law and it lists, as examples of this kind of obligation, gratitude, charity and “other merely moral duties”. A natural obligation is defined in the article to be one “which can not be enforced by action, but which is binding on the party who makes it, in conscience and according to natural justice.”
Article 1758 provides:
“Natural obligations are of four kinds r
“1. Such obligations as the law has rendered invalid for the want of certain forms, or for some reason of general policy, but which are not in themselves immoral or unjust.
*804 “2. ' Such as are made by. persons having the (discretion necessary to enable them to contract, but who are yet rendered incapable of doing so by some provision of law.
“3. When the action is barred by prescription, a natural obligation still subsists, although the civil obligation is extinguished.
“4. There is also a natural obligation on those who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only.”
In considering Articles 1757 and 1758 of the Code, it is of primary importance to determine whether natural obligations, as defined in Article 1757, are restricted to those natural obligations particularly described in Article 1758, or whether those in the latter article are merely illustrative of the natural obligation defined in Article 1757. This question has already been answered by this Court in Succession of Miller v. Manhattan Life Ins. Co., 110 La. 652, 34 So. 723, 725, where it was said that “ * * * our Code, art. 1757, draws sharply the line between mere moral obligations and such as it calls ‘natural obligations,’ and denies to the former not only a right of action, but also ‘any legal operation’ ; and it proceeds to classify natural obligations into four distinct categories,” and where it was concluded that, in order for a moral obligation to serve as a consideration of an onerous contract, it would have to fall within one of the distinct categories set forth in Article 1758.
The decision in Succession of Miller, supra, was quoted from with approval in Succession of Burns, 199 La. 1081, 7 So.2d 359, 363, where it was stated that the four categories of natural obligations “enumerated in Article 1758 of the Revised Civil Code are exclusive in their scope”,[2] and that, since the obligation (there considered) did not fit in any one of those categories but was merely a moral one, it would not “support a contract.”
In view of the settled jurisprudence that the kinds of natural obligations described in Article 1758 of the Code are exclusive, it becomes necessary to examine the categories listed in the article in order to 'ascertain if the so-called natural obligation pleaded by defendant comes within one or more of the four classes.
Obviously, if the alleged bequest of Mrs. Champagne was void solely because it was oral and not in the form required for a donation mortis causa, there would have been a natural obligation under the fourth class set forth in Article 1758, for it provides that “There is also a natural obligation on those who inherit an estate, *806 either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only.” (Emphasis ours.) [3] But, apart from its nullity of form, the bequest in this case was void in substance as it contained either a fidei commissum or a substitution reprobated under our law. Therefore, there is no basis upon which to warrant a holding that there was a natural obligation on the part of Mrs. Breaux to transfer the property to the defendant, unless the oral disposition of Mrs. Champagne can be brought within the first three classes of natural obligations enumerated in Article 1758. A consideration of these kinds of natural obligations makes it at once plain that the second and third types described in the article, i. e., inability to contract because of minority, etc., or where an action is barred by prescription, are without pertinence here.
On the other hand, it would seem, at first blush, that the alleged obligation of Mrs. Breaux might be governed by the first class of natural obligations set forth in the article which includes “Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust.” However, on close examination and study of Article 1758 as a whole, it will be perceived that the first three classes of natural obligations enumerated in the article are limited to matters of contract and have no application whatever to donations or bequests which are placed exclusively within the fourth class. In fact, a perusal of the jurisprudence reveals that this Court has already decided the question. In Morris v. Abney, 135 La. 302, 65 So. 315, 318, a case relied on by defendant, — -the Court, in discussing the various articles of the Code dealing with natural obligations, i. e., Articles 1757, 1758, 1759, and 1846, stated: “Of the four kinds of natural obligations specified in article 1758, the first three have their origin in contract, but the fourth arises from donations, ‘defective for want of form only.’ ”
Thus, in the instant case, the obligation of Mrs. Breaux to her donor did not arise out of a contract, but solely as a result of her inheritance of the property by last will and testament. And (as above stated), if this obligation to execute the oral disposition of Mrs. Champagne in favor of defendant had been defective only as to form and not null in substance, it would have created a natural obligation on the part of Mrs. Breaux and her compliance *808 therewith would have supplied a consideration supporting the transfer of the property. But the bequest being null in substance, while it might have created a moral obligation, cannot be sustained as a natural one and therefore the deed under attack can only be regarded as a donation in disguise, unsupported by consideration.
Counsel for defendant also relies upon Article 1759, which declares that no suit will lie to recover what has been given in compliance with a natural obligation and that such an obligation is a sufficient consideration for a new contract. This article is, of course, applicable only to cases of natural obligations and, since we find that the conveyance in the instant case was not made in compliance with such an obligation/) it is irrelevant here.
Being of the opinion that the purported sale by Mrs. Breaux to the defendant is without consideration and therefore a donation in disguise, it is an absolute nullity for the reason that, in the act, she reserved to herself for her life the enjoyment and usufruct of the property. Article 1533 of the Code provides: “The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but can not reserve it for himself.”
The jurisprudence is well established that the reservation of usufruct to a don- or of immovable property renders the entire instrument radically null and of no force and effect. See Creech v. Errington, 207 La. 615, 21 So.2d 761, and authorities there cited.
The judgment appealed from is therefore reversed, and it is now ordered that there be judgment in favor of plaintiffs, decreeing the purported deed from Mrs. Iselle Hebert Breaux to Elmo J. Breaux, dated May 27, 1943, and registered in the Conveyance Records of the Parish of Lafourche in Conveyance Book 107, page 116, bearing Entry No. 61647, to be null and void and it is ordered cancelled and erased from the records of that parish. Defendant is to pay all costs.
HAMITER, J., dissents and assigns written reasons.

. For a full discussion of trusts, fidei commissa and substitutions, see article of Professor Eugene A. Nabors in 4 Tulane Law Review, pages 1-17 and 190-213, where all of the applicable jurisprudence is reviewed.

. Contra: In re Atkins’ Estate, 5 Cir., 30 F.2d 761, without citation of authority for its conclusion; and obiter dictum in Commonwealth Finance Co. v. Livingston, La.App., 12 So.2d 44.

. It seems quite evident that the redactors of the Civil Code, in restricting the natural obligation imposed on a legatee of an estate to execute the dispositions of the testator which were defective for want of form only, evinced a plain purpose that the voluntary execution by the legatee of reprobated donations (matters of substance) were to be discouraged and that any such transfer by a legatee would not suffice as consideration for an onerous contract.