175 So.2d 113 (1965)
Succession of Lillie Weir SIMMS, Widow of Edward F. Simms.
No. 1584.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1965.
Rehearings Denied March 8, 1965.
*115 Milling, Saal, Saunders, Benson & Woodward, Eugene D. Saunders, Lawrence K. Benson, Guy C. Lyman, Jr., New Orleans, for Alden X. Boddeker and Henry C. Riquelmy, defendants-appellants.
Leonard Oppenheim, New Orleans, for William P. Hamblen, and Leclare Ratterree, Jr., Undertutor, and Lillie Franzheim McCullar, only as natural tutrix of her minor children, Lillie Celeste McAshan, Kenneth Alexander McAshan, Elizabeth Simms McAshan and Michael M. McCullar, appellants.
H. Alva Brumfield, Sylvia Roberts, Baton Rouge, for Dr. Benjamin F. Kitchen, Jr., tutor of the minor, Benjamin F. Kitchen, III, appellant.
Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr., Louis B. Claverie, New Orleans, for Kenneth Franzheim, II, appellant.
Sidney Wright, Houston, Tex., Cobb & Wright, Morris Wright, Joseph V. Ferguson, II, New Orleans, for Mrs. Elizabeth Reese, appellee.
Chaffe, McCall, Phillips, Burke, Toler & Hopkins, John L. Toler, E. Harold Saer, Jr., New Orleans, for Lillie Weir Franzheim McCullar, appearing only in her capacity as provisional administratrix of the succession of Bessie Simms Franzheim, defendant-appellee.
Chaffe, McCall, Phillips, Burke, Toler & Hopkins, John L. Toler, E. Harold Saer, Jr., New Orleans, for Lillie Weir Franzheim McCullar, only in her individual capacity, defendant-appellee.
Montgomery, Barnett, Brown & Read, Wood Brown, New Orleans, for Kenneth Franzheim, II, individually, appellee.
Chester A. Eggleston, Port Sulphur, curator ad hoc for the minors: Benjamin F. Kitchen, III, Edward F. Kitchen, Elizabeth F. Kitchen; for Philip Masquelette, under-tutor of above minors.
Before REGAN, CHASEZ and HALL, JJ.
REGAN, Judge.
Plaintiff, Mrs. Elizabeth Franzheim Reese, instituted this suit on November 27, 1961, endeavoring (a) to annul various trust provisions contained in the will of her late grandmother, Mrs. Lilly Weir Simms, (b) to nullify probate of the will to the extent of its invalidity, (c) and to cancel the judgment of possession rendered on July 21, 1958, in the Louisiana proceedings ancillary to her grandmother's Texas estate.
The defendants and the respective capacities in which they were sued herein are: (1) Kenneth Franzheim, II, the plaintiff's brother and a beneficiary under one of the contested trusts, individually, and in his capacity as executor of the Simms estate, and also as trustee of one of the trusts; (2) Mrs. Lilly Franzheim McCullar, the plaintiff's sister, individually, as beneficiary of one of the contested trusts, as provisional administratrix in the Succession of her mother, Mrs. Bessie Simms Franzheim, and as tutrix of her minor children, who are beneficiaries under the trusts; (3) Alden I. Boddeker, in his capacity as executor and trustee; (4) Henry C. Riquelmy, in his capacity as an executor and trustee; (5) W. P. Hamblen, in his capacity as an *116 executor and trustee; and (6) the plaintiff's minor children, who are beneficiaries under one of the disputed trusts.
The defendants initially pleaded several exceptions which were overruled by the trial court.
The defendants then answered and denied the invalidity of Mrs. Simms' testament.
After a trial on the merits was consummated,[1] the lower court rendered a judgment in favor of the plaintiff, declaring Mrs. Simms' testamentary trusts to be null and void. The defendants have therefore prosecuted this appeal.[2]
The record reveals that the testatrix, Mrs. Lilly Weir Simms, died on May 1, 1957, at her domicile in Houston, Texas. She was survived by one child, namely, Mrs. Bessie Simms Franzheim, the mother of the plaintiff, Mrs. Elizabeth Franzheim Reese, and of Kenneth Franzheim, II, and Lilly Franzheim McCullar, both of whom are defendants herein. Mrs. Franzheim, who was also domiciled in Texas, died on December 15, 1959, after participating in her mother's Texas and Louisiana mortuary proceedings.
Mrs. Simms' testament, which was confected on January 3, 1957, was admitted to probate in Harris County, Texas. Ancillary probate proceedings were opened in the district court for Plaquemines Parish, and on June 5, 1957, the testament was ordered registered, probated and executed with respect to the Louisiana property affected thereby. A judgment of possession in the ancillary proceeding was rendered on July 21, 1958, placing the legatees into possession of the Louisiana estate.
The testatrix, after creating certain particular legacies, bequeathed one-third of all the real estate and royalties owned by her in the State of Louisiana to her daughter, Mrs. Franzheim. The remainder of her estate was placed in two trusts, and it is this portion of her grandmother's testament which plaintiff is endeavoring to nullify.
The controversial article of the testament is designated by the Roman Numeral XIX, and it reads as follows:
"XIX
"All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and character and wheresoever situated, I give, devise and bequeath as follows:
"(A) one-half (½) thereof in trust to Bessie Franzheim, Kenneth Franzheim II, Alden X. Boddeker, Henry C. Riquelmy and W. P. Hamblen, and their successors, the Trustees named in the LILLIE WEIR SIMMS TRUST FOR LILLIE FRANZHEIM McCULLAR, which Trust Agreement is recorded under file #69835 in Book 103 of Conv., Page ___, and Book 1 of Dan., Page ___, et seq., in the Parish of Cameron, State of Louisiana, to be held and administered by them and the income from which shall be invested or distributed at the sole discretion of said Trustees, and shall be held by said Trustees and their successors with the same rights, powers and duties as are set forth in the above named Trust Agreement, save only that the income from the properties herein bequeathed to them as such Trustees may either be invested by them or distributed to the *117 beneficiary, at their sole discretion, and said beneficiary shall not have the right to demand any distribution to her should the Trustees, in their sole and unlimited discretion, decide that such distribution is either unnecessary or unwise. Said properties herein bequeathed to said Trustees shall be held by them for and during the natural life of my said granddaughter, LILLIE FRANZHEIM McCULLAR, if she survives me, and after her death or my death, whichever occurs last, said properties shall pass to my great-grandchildren LILLIE CELESTE McASHAN, KENNETH ALEXANDER McASHAN, ELIZABETH SIMMS McASHAN and MICHAEL M. McCULLAR, share and share alike, subject to the provisions of Paragraph (C) hereof.
"(B) The other one-half (½) thereof in trust to Kenneth Franzheim, Bessie Franzheim, Alden X. Boddeker, Henry C. Riquelmy and W. P. Hamblen, and their successors, the Trustees named in the LILLIE WEIR SIMMS TRUST FOR KENNETH FRANZHEIM II, which trust agreement is recorded under file #69830 in Book 103 of Conv., Page ___, and Book 1 of Dan., Page ___, et seq., in the Parish of Cameron, State of Louisiana, to be held and administered by them and the income from which shall be invested or distributed at the sole discretion of said Trustees, and shall be held by said Trustees and their successors with the same rights, powers and duties as are set forth in the above named Trust Agreement, save only that the income from the properties herein bequeathed to them as such Trustees may either be invested by them or distributed to the beneficiary, at their sole discretion, and said beneficiary shall not have the right to demand any distribution to him should the Trustees, in their sole and unlimited discretion, decide that such distribution is either unnecessary or unwise. Said properties herein bequeathed to said Trustees shall be held by them for and during the natural life of my said grandson, KENNETH FRANZHEIM II, if he survives me, and after his death or my death, whichever occurs last, said properties shall pass to my great-grandchildren, LILLIE CELESTE McASHAN, KENNETH ALEXANDER McASHAN, ELIZABETH SIMMS McASHAN, MICHAEL M. McCULLAR, BENJAMIN FORD KITCHEN III, EDWARD SIMMS KITCHEN, and ELIZABETH FRANCES KITCHEN, share and share alike, subject to the provisions of Paragraph (C) hereof.
"(C) In the event that at the time of the vesting of such properties in my said great-grandchildren, any of my said great-grandchildren named herein should be under the age of twenty-one (21) years, then and in that event the properties herein bequeathed to such minor shall pass to and become the properties of the Trustees of such great-grandchildren under the trusts which I have heretofore created and which I now create as follows:
"(1) LILLIE WEIR SIMMS TRUST FOR LILLIE CELESTE McASHAN bearing file number 69836 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;
"(2) LILLIE WEIR SIMMS TRUST FOR KENNETH ALEXANDER McASHAN bearing file number 69837 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;
"(3) LILLIE WEIR SIMMS TRUST FOR ELIZABETH SIMMS McASHAN bearing file number 69838 and recorded in Book 103 of Conveyance and Donation *118 Book 1, Cameron Parish, Louisiana;
"(4) LILLIE WEIR SIMMS TRUST FOR BENJAMIN FORD KITCHEN III, bearing file number 69834 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;
"(5) LILLIE WEIR SIMMS TRUST FOR EDWARD SIMMS KITCHEN bearing file number 69833 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;
"(6) LILLIE WEIR SIMMS TRUST FOR ELIZABETH FRANCES KITCHEN bearing file number 69832 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;
"(7) As to MICHAEL M. McCULLAR, who has no trust provided for him as set out above, if at the time of the vesting of such properties in him he be under the age of twenty-one (21) years, then the share bequeathed to him shall pass to and become the properties of these Trustees: W. P. Hamblen, Alden X. Boddeker, Henry C. Riquelmy and Bessie Franzheim. Such trust shall be created for the same length of time as is provided in the trusts set out in the paragraphs numbered (1) through (6) above, so that the Trustees in this trust, if created, shall hold said properties in trust for such minor child in the same manner as is provided in the trusts above named. Said Trustees shall execute an instrument in writing recordable in the parishes in Louisiana in which my property may be situated acknowledging that they hold said property in trust, and such instrument shall set out the terms and conditions of said trust as are set forth in those six (6) trusts above referred to.
"(The trust agreements set out in Paragraphs (1) through (6) above are recorded in other parishes in Louisiana, but these references are given for the purpose of identifying the Trustees and the trust properties which shall pass in the event any of my properties shall go to any of the above named great-grandchildren under said trusts.)
"Such portion of my estate going to the Trustees of any of my said great-grandchildren under this, my Will, shall be held, managed and administered by said Trustees in the same manner, to the same extent, and with the same duties as are conferred in the Trust Agreements set out in Paragraphs (1) through (6) above, and shall be held by such Trustees for the same term as is set forth in such Trust Agreements, whereupon said properties herein bequeathed and the accumulations shall be paid over to my great-grandchildren."
The plaintiff insists that the foregoing portion of her grandmother's will is invalid because the trusts contained therein created prohibited substitutions contrary to Section 16, Art. IV of the LSA-Constitution of 1921, LSA-Civil Code Art. 1520, and LSA-R.S. 9:1791; powers of appointment contrary to LSA-Civil Code Art. 1573; and incorporation by reference of non-testamentary trust agreements contrary to LSA-Civil Code Art. 1570. She also contends that the quoted residuary clause is against public policy and public order. Moreover, it is asserted that the invalidity of the residuary clause results in Mrs. Simms' having died intestate pro tanto, and that the intestate portion of Mrs. Simms' estate devolves upon her as one of the three children and forced heirs of *119 her mother, who in turn was the sole child and forced heir of the testatrix.[3]
The lower court rendered judgment in plaintiff's favor and declared the trusts created in the residuary clause of Mrs. Simms' will to be null and void. Consequently, the trial judge annulled the probate of the will and the judgment of possession insofar as they were related to the testamentary trust. The court then reasoned that, the trust being invalid, the property subject thereto fell into intestacy, and that this property was inherited by the testatrix's daughter, and then in turn by her daughter's children, one of whom is the plaintiff. However, the court did not fix the exact amount of the plaintiff's inheritance, since she was also involved in litigation in which she attacked the provisions of her mother's will.
Defendants insist that the following errors exist in the judgments rendered by the lower court:
(1) In refusing to maintain the defendants' declinatory exception of lack of jurisdiction ratione materiae and personae, and their exception to the venue of the action.
(2) In concluding that the provisions of the quoted portion of Mrs. Simms' will are null and void as (a) being contrary to the laws, public policy, and public order of Louisiana, (b) containing prohibited substitutions in violation of Sec. 16, Art. IV of the LSA-Constitution of 1921, LSA-Civil Code Art. 1520, and LSA-R.S. 9:1791, and (c) being in violation of LSA-Civil Code Art. 1573.
(3) In deciding that Louisiana's trust laws and its laws relating to substitutions and powers of appointment are applicable to the overriding royalty interests left by the decedent.
(4) In canceling, annulling, rescinding, and setting aside the probate of Mrs. Simms' will and the judgment of possession rendered on July 21, 1958, insofar as they relate to the residuary clause of said will.
(5) In concluding that Mrs. Simms died intestate as to the property encompassed by the residuary clause, and in recognizing the plaintiff, Mrs. Reese, and Mrs. Franzheim's other two children to have rights of inheritance through their mother, Mrs. Franzheim, with reference to the property covered thereby.
(6) In undertaking to decree the reinstatement of the Louisiana executors and to direct them to proceed to administer Mrs. Simms' Louisiana estate heretofore closed by judgment of possession.

RIGHT OF ACTION
Before engaging in a discussion of the foregoing errors, we must initially dispose of certain arguments advanced by counsel on this appeal relative to the absence of plaintiff's right of action to attack the provisions of her grandmother's will. In essence, counsel contends that the plaintiff is not a forced heir of her grandmother and that she can therefore inherit only such rights as her mother possessed at the time of her mother's death and in conformity with her mother's will. Counsel elucidates upon this argument by pointing out that plaintiff's mother acquiesced therein when she qualified as tutrix of Mrs. Simms' Louisiana estate and trustee of each of the trusts in dispute, and petitioned that the will be executed and that the heirs be placed in possession in conformity with the will.
In Hoggatt v. Gibbs[4] the plaintiff instituted suit in order to attack the provisions of his grandfather's will and was met by exceptions based upon his mother's *120 acceptance and ratification of the provisions thereof. The Supreme Court maintained the plaintiff's right to sue for his lawful share, predicating its decision upon the rationale that a disposition of property reprobated by law, such as a substitution, is not susceptible of confirmation or ratification.[5] Therefore, in view of the foregoing conclusion we are of the opinion that the action of the plaintiff in attacking the residuary clause in question, as a prohibited substitution, is not precluded by estoppel, since her mother could not have legally acquiesced in the execution of a prohibited substitution; and if such a substitution exists in the will, it is an absolute nullity and subject to being contested by the testatrix's grandchildren.
Counsel for the defendants further contends that by virtue of the rationale of LSA-Civil Code Art. 1758(4) there existed a natural obligation on the part of the plaintiff's mother to execute the provisions of her grandmother's will. This article reads as follows:
"There is also a natural obligation on those who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only."
In view of the foregoing article, the defendants reason that the plaintiff is precluded from recovering as a result of the rationale emanating from LSA-Civil Code Art. 1759(1), which provides that no suit will lie to recover what has been paid or given in compliance with a natural obligation.
In support of this conclusion, counsel points to the case of Breaux v. Breaux.[6] However, an analysis of this case reveals that it does not support the defendants' argument. In its original opinion the organ of the Supreme Court reasoned, correctly we feel, that a fidei commissa or substitution is a defect of substance and not of form, and therefore does not create a natural obligation under LSA-Civil Code Art. 1758(4) to pay the amounts bequeathed. However, on rehearing the court in effect stated that irrespective of whether the fourth paragraph of LSA-Civil Code Art. 1758 is applicable to testamentary donations, the standard applied in the first paragraph of that articlei. e., that a natural obligation is one which the law has rendered invalid for the want of certain forms or for some reason of general policy, but which is not in itself immoral or unjustis controlling. Thus the result reached by the court is that unless the performance of a donation or disposition is immoral or unjust, a natural obligation is created on the part of the heir to carry them out, apparently irrespective of the provisions of paragraph 4 of Art. 1758. The court then concluded that the bequest in question was a fidei commissa and, unlike a substitution, neither immoral nor unjust.[7]
We do not adhere to the reasoning of this decision, and we are not compelled to follow it since it very obviously does not apply to substitutions. Hence, if the rationale of the original opinion in Breaux v. Breaux is correct, the substitution allegedly created in the Simms will is a defect of substance and not form, and hence does not create a natural obligation under LSA-Civil Code Art. 1758(4).[8] On the other hand, if the opinion on rehearing in the Breaux case is correct, the strong prohibition *121 against substitutions[9] acknowledged therein indicates that under the first paragraph of Art. 1758 such a disposition would not create a natural obligation.
We are therefore of the opinion that the plaintiff is not precluded from prosecuting this action either by the acquiescence or ratification of her mother or by the inability created under our law to recover what has been paid pursuant to a natural obligation.

EXCEPTION TO THE JURISDICTION RATIONE MATERIAE
The defendants initially pleaded exceptions to the jurisdiction of the court ratione materiae and ratione personae, as well as an exception to the venue of the suit. These exceptions were overruled by the trial court; however, they have been reurged before us on appeal and therefore each exception will be discussed hereafter in the order in which we have enumerated them.
The exceptions to the jurisdiction ratione materiae are predicated on the fact that the succession was in effect closed by virtue of a judgment of possession signed on July 21, 1958. Apparently, as an additional basis for this exception, defendants also point out that they are domiciled in Harris County, Texas, and therefore are non-residents of Louisiana.[10]
We are of the opinion that the foregoing exception is not well founded.
The Code of Civil Procedure defines jurisdiction as the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled.[11] Moreover, jurisdiction over the subject matter of an action is defined in Art. 2 thereof as follows:
"Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted."
In conformity with the rationale emanating from the foregoing article, Art. 3401 expressly and specifically confers upon Louisiana courts jurisdiction for succession purposes over property situated in Louisiana which belonged to a deceased non-resident at the time of his or her death.
Therefore, it is quite obvious that the principal requirement for jurisdiction ratione materiae in succession proceedings involving the property of a deceased non-resident is the location of the succession property in this state. The fact that the executors are non-residents, and that a judgment of possession may have been rendered are quite irrelevant for purposes of jurisdiction over the subject matter of this litigation.[12]

EXCEPTIONS TO THE JURISDICTION OF THE COURT RATIONE PERSONAE
The non-resident defendants[13] also pleaded an exception to the jurisdiction of the court ratione personae, predicated upon the fact that they are domiciled in Harris *122 County, Texas, and therefore are not amenable to Louisiana service of process.
Jurisdiction over the person is provided for in Art. 6 of the LSA-Code of Civil Procedure, which reads:
"Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. This jurisdiction must be based upon:
"(1) The service of process on the defendant, or on his agent for the service of process;
"(2) The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state; or
"(3) The submission of the party to the exercise of jurisdiction over him personally by the court, or his express or implied waiver of objections thereto."
It has been emphasized in the editorial comments applicable to this article, that the concept of jurisdiction over the person was made part of the procedural law of Louisiana as one of the requirements of due process of law in the case of Pennoyer v. Neff.[14] Since the rendition of that decision, an avalanche of jurisprudence has emanated from tribunals, both high and low, in an effort to establish as guidelines, in one situation or another, the exact limitations of the doctrine enunciated therein.
In any event, the most recent rationalization upon the subject emanates from the case of McGee v. International Life Insurance Company,[15] wherein the organ of the court, quoting International Shoe Co. v. State of Washington,[16] stated that the test to be applied is as follows:
"* * * `due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' Id., 326 U.S. at page 316, 66 S.Ct. at page 158."
In applying the foregoing reasoning to the facts hereof, the record reveals that the defendants voluntarily qualified as executors in the Louisiana proceedings ancillary to the Texas estate of the decedent, and processed the administration thereof to a judgment of possession. After obtaining that judgment the defendants filed a motion to fix additional inheritance taxes, a motion to cancel a surety bond, and an application for authority to sign an extension of a mortgage note and a mortgage and pledge which they had executed together with other parties on July 25, 1958, which, to reiterate for the purpose of emphasis, was after the judgment of possession. Shortly before this suit was instituted, they filed a petition to withdraw the application for authority to sign the extension of the mortgage and pledge, and in this petition they designated themselves as former executors and declared that they had become functus officio by virtue of the judgment of possession.
Under Art. 2931 of the LSA-Code of Civil Procedure the proper parties defendant in an action to annul a probated testament are the legatees, the residuary heir, if any, and the executor, if he has not been discharged. Therefore, one of the many questions posed for our consideration herein is whether the defendants, as executors and legatees, have, in *123 fact, possessed the minimum contacts with the State of Louisiana so as not to offend the traditional notions of fair play and substantial justice.[17]
A laborious analysis of the foregoing facts is unnecessary in view of the rationale emanating from the McGee case. Therein, the defendant corporation did little more than write a policy of insurance, and this served as sufficient contact with the state to subject it to the process thereof.
In this case, the defendants have qualified as executors in the ancillary proceeding to administer Louisiana property in conformity with Louisiana law. Moreover, those of the defendants who are heirs claim property rights under the decedent's will to Louisiana property. Under these circumstances, it is clear that the defendants possess the minimum contacts necessary to satisfy the requirements of due process of law in the area of jurisdiction ratione personae.
Therefore, we are of the opinion that the lower court ruled correctly in dismissing the defendants' exceptions to the jurisdiction ratione personae.

VENUE
The defendants filed declinatory exceptions to the venue of this suit predicated upon the fact that certain immovable property, royalties, oil, gas, and mineral rights or leases bearing upon other immovable property are all located outside of the Parish of Plaquemines.
It is relatively significant to note that the defendants themselves chose the District Court of Plaquemines Parish as the proper place to institute these ancillary probate proceedings, and the plaintiff was forced by virtue of the provisions of Art. 2931 of the LSA-Code of Civil Procedure to file the action to annul the will in the same proceeding. Thus, the defendants occupy the paradoxical position of attacking the validity of their own choice of venue. However, since the venue provisions relating to succession proceedings promulgated in Art. 2811 of the LSA-Code of Civil Procedure are mandatory and may not be waived,[18] the defendants' objections thereto nevertheless must be considered by this court.
Articles 2811 and 3401 of the LSA-Code of Civil Procedure provide that the proper venue for successions of decedents not domiciled in this state is any parish where immovable property of the deceased is situated or, in the absence of immovables, where his movable property is located. In this case the decedent owned a relatively small amount of immovable property in St. Martin Parish, and the only property owned by her in Plaquemines Parish consists of certain overriding royalties derived from mineral leases bearing upon Plaquemines immovables. Consequently, defendants argue that the overriding royalty interests of the decedent are movables, and that the proper venue under Art. 2811 of the LSA-Code of Civil Procedure is St. Martin Parish, where the decedent's immovable property is located.
The vexatious question of the classification or characterization of overriding royalties as movable or immovable property must be decided by us in order to determine the propriety of the venue of the plaintiff's action. Even more important, however, the question arises again hereinafter for the purpose of deciding whether the law of Texas or the law of Louisiana is applicable so as to determine the validity of Mrs. Simms' testament.
At this point suffice it to say that, as will be explained in detail later, the provisions *124 of Louisiana law leave little if any doubt of the proper characterization of the decedent's overriding royalties for succession purposes as immovable property. Consequently, we are of the opinion that the lower court reasoned correctly in overruling the defendants' exceptions to the venue of this suit.

ON THE MERITS
At the inception of this opinion relative to the merits hereof, we emphasize that there is no substantial dispute over the validity of the form of the will.[19] Under the Uniform Wills Law[20] a foreign will confected in conformity with the formal requisites of the state where executed or the state of the testator's domicile shall have the same force and effect in Louisiana, provided it is in writing and subscribed by the testator. The litigants herein all concede that the will which forms the subject matter of this dispute meets the formal requisites of Texas law.
It is also conceded that Mrs. Simms' testament conforms to the substantive requisites of Texas law. The essence of the controversy herein revolves around the question of whether the will conforms to the law of Louisiana insofar as it effects the property situated therein.
Before this question can or should be resolved, however, we must initially decide whether Texas or Louisiana law applies in judging the validity vel non of the testament. If its validity in Louisiana hinges upon the provisions of Texas law, the plaintiff's suit necessarily must fail. On the other hand, if Louisiana law is applicable, we must then consider the arguments propounded by the plaintiff in her attack upon the validity of the will.
It is a well settled rule relating to conflicts of law that movable property located outside the state of the decedent's domicile is transferred in conformity with the law of his state. On the other hand, it is equally well settled that immovable property is distributed in accordance with the law of the state in which the property is located.[21] Hence, there is no question in this case that the fee land located in St. Martin Parish descends in conformity with Louisiana law.
The difficulty arises in the choice of law applicable when the decedent's property is of such a nature as to require its characterization as movable or immovable. In Louisiana, this difficulty is compounded by the fact that incorporeal things may also be characterized as either movable or immovable.[22]
In the present controversy counsel for the defendants argue that the overriding royalty interests involved herein, which incidentally are the most valuable properties affected by this dispute, are in reality "personal" property since leasehold interests in minerals have been classed as personal property by the Louisiana Supreme Court[23] despite the existence of three separate statutes[24] enacted by the legislature declaring such interests to be "real rights". On the other hand, counsel for the plaintiff endeavors to draw a distinction between "real rights" and incorporeal immovables, *125 and argues that for conflicts of law purposes the royalty interests in question are incorporeal immovables irrespective of whether they are real rights under our jurisprudence.
After considering the innumerable ramifications of the problems involved in these arguments, it seems perfectly clear to us that "real rights" and incorporeal immovables are not separate and distinct concepts. While it is indeed unfortunate that Louisiana mineral law, which, to say the least, is already confused, should be further encumbered by common law terminology appearing in the statutes creating "real rights", we feel that this inadvertent use of semantics does not change the nature of the concept represented thereby. Consequently, we are of the opinion that the "real rights" created by the legislature merely constitute a species of incorporeal immovable property irrespective of what they are termed, and therefore must be accorded the same treatment by the courts.
In Louisiana, ordinary leases create only personal rights. In the Glassell case,[25] the Supreme Court asserted that mineral leases also give rise only to personal rights. In 1938 the legislature enacted Act 205, which classified mineral leases and contracts applying thereto as real rights and incorporeal immovable property. Then in Tyson v. Surf Oil Company[26] the Supreme Court upheld the retroactive effect of this statute, but reasoned that it was procedural and not substantive in character. The legislature then enacted Act 6 (2d Ex.Sess.) of 1950,[27] which re-enacted the prior statute and provided that it is "substantive as well as procedural", and omitted any reference to its retroactive effect. Since its enactment, this statute has been observed primarily in its breach, with the courts "classifying" mineral leases as immovables only for certain purposes.[28] Defendants' counsel argue that since Act 6 (2d Ex.Sess.) of 1950 omitted any reference to its retroactive effect, no statute existed in 1936 and 1937, when the overriding royalties were created, making them immovable properties; thus, they erroneously conclude that at the time the royalty interests were created they were movables, and should remain so. This argument, however, is predicated on the false premise that the pertinent law is that of the date of the creation of the mineral interest. To the contrary, it is well settled that the right of inheritance and disposition is governed by the law in effect at the moment of death.[29] At the moment of death, the provisions of the 1950 statute made it clear that the overriding royalties involved herein were incorporeal immovables.
*126 Finally, in 1960 the legislature enacted the present LSA-Code of Civil Procedure, Art. 3664, which reads as follows:
"A mineral lessee or sublessee, owner of a mineral interest in immovable property, owner of a mineral royalty, or of any right under or obligation resulting from a contract to reduce oil, gas, and other minerals to possession, is the owner of a real right. These rights may be asserted, protected, and defended in the same manner as the ownership or possession of immovable property, and without the concurrence, joinder, or consent of the owner of the land."
It is thus apparent that there are now two statutes in existence which unequivocally provide that mineral leases and interests therein constitute "real rights".[30] In addition thereto, there exists a multitude of cases classifying such interests as movable or immovable for various purposes.[31] Therefore, in order to avoid placing the existing law upon the judicial anvil and hammering it into an unexpected shape, and in order to facilitate the writing of a more meaningful opinion, we are limiting the ratio decidendi hereof, or the effect of our ratiocination herein, to the area of conflicts of law involving the characterization of succession property. In characterizing the royalty interests herein as either movable or immovable, for the purpose of descent and distribution, so as to determine whether Texas or Louisiana law applies, we are compelled initially to recognize that the clear intention of the legislature has been to impose upon mineral leases and contracts affecting these leases the qualities of incorporeal immovables.[32] Moreover, we must also recognize that the State of Louisiana, in order to maintain the integrity of its public records system, should not be forced to look, in either its sovereign or proprietary capacity, to the laws, decisions, or proceedings of another state in order to determine the ownership or possession of its own mineral rights.
Therefore, we conclude that for the purpose of characterizing succession property, i. e. descent and distribution, in the area of conflicts of law, overriding royalties and other interests in mineral leases are incorporeal immovables, so that the validity of foreign testamentary dispositions of such property located in this state definitely must be determined by the law of the State of Louisiana.[33]
The next vexatious question posed for our consideration is whether the provisions of the Simms testament which have been assailed herein are valid under Louisiana law. The pertinent portions of this aspect of the will have been related hereinabove, and no useful purpose would be served by a reiteration thereof. Reference may be made thereto for the purpose of the following discussion.
The principal attack upon the will consists of the plaintiff's contention that the quoted provisions thereof constitute prohibited substitutions in violation of Section 16 of Art. IV of the LSA-Constitution of 1921, LSA-Civil Code Art. 1520, and LSA-R.S. 9:1791.
In answer to this argument, the defendants assert that the will is valid under Art. 2252 of the Louisiana Trust Code of 1964,[34] which endeavors to validate any provision or disposition in a trust created before its enactment if such provisions are not in conflict with the terms of the Code. Thus, the defendants argue that it is immaterial whether the provisions in question contain *127 substitutions, since Art. 1723[35] validates dispositions which would constitute substitutions prohibited by law if they were made free of trust. In other words, the defendants insist that the Trust Code of 1964 was intended to have a retroactive effect.
It is unnecessary that we engage in a laborious discussion of this argument, since we conclude that the new Trust Code is not applicable herein. If we were to reason that Art. 2252 affected trusts which arose by virtue of the death of the testator prior to the enactment of the Trust Code, we would be divesting rights acquired in successions long closed.[36] It is too well settled to require citation in support thereof that if a statute is susceptible of two interpretations, one constitutional and one unconstitutional,[37] the courts must afford it the benefit of a constitutional interpretation.[38]
Therefore, we are of the opinion that the Trust Code can have no effect on matters occurring before the effective date of its enactment in the year of 1964, which was long after the death of both Mrs. Simms and of her daughter, Mrs. Franzheim, from whom the plaintiff, Mrs. Reese, acquired her rights in the Succession of Mrs. Simms.
The doctrine of le mort saisit le vif has been the rule of Louisiana jurisprudence since 1825, and the succession descends to the heir from the moment of death, so that his or her rights are fixed as of that instant and may not be divested by the Trust Code of 1964.
In support of her argument that the provisions in question contain prohibited substitutions, plaintiff relies primarily on the pronouncements of the Supreme Court which appear in the Succession of Guillory[39] and also on the Succession of Meadors.[40] In the Succession of Guillory, the decedent, a Texas domiciliary, bequeathed Louisiana property to a bank as trustee, to be held in trust for the benefit of her son during his lifetime, and at his death the ownership of the property was to pass to the Baptist General Convention. In a very terse opinion, the organ of the Supreme Court concluded that this provision constituted a prohibited substitution, and upheld an exception of no right or cause of action to the petition to have the will recognized in Louisiana.
In the Succession of Meadors, decided by the Court of Appeal for the Second Circuit, the testator's will bequeathed the property to a trustee, who was directed to pay the income therefrom to his wife and sister, and then to the survivor in case of the death of either of these relatives. Upon the death of both his wife and sister, the trust was to terminate, and the trust property was to pass to his intestate heirs as determined by the laws of Tennessee. Basing its decision primarily on the Guillory case, the court reasoned that the provision in question constituted a prohibited substitution.
In the Simms will, the testatrix bequeathed one-half of the disputed amount in trust to certain trustees for the benefit of her granddaughter, Lilly Franzheim McCullar, and on the death of her granddaughter the trust property was to pass to her great-grandchildren. The same provisions were contained in a trust bearing upon the other one-half of the disputed property, the beneficiary of which was Kenneth Franzheim, II. It was provided in both cases that in the event the great-grandchildren were minors at the time title to the property vested *128 in them, it also would be placed in trust for their benefit.
It is obvious that the property was bequeathed to the trustees to be held in trust for their respective beneficiaries during their natural lives. Only upon the death of the beneficiaries was title to the property to go to the testatrix's great-grandchildren. In effect, the title to the bequeathed property was to vest in the trustees for their beneficiaries at the testatrix's death, and on the death of the beneficiaries, the title to the same property was to vest in the testatrix's great-grandchildren. Thus, the great-grandchildren were to take directly from the testatrix by a title which was to spring into existence only on the death of the trust beneficiaries. This is a classic example of a substitution reprobated by Louisiana law[41] and exactly what the Supreme Court invalidated in the Guillory case. As pointed out by the court in Succession of Meadors, the testatrix endeavored to write a will for her legatees and to substitute her own will for the legal order of succession from her legatees.[42] Such a provision is an absolute nullity under Louisiana law.[43]
In view of what we have said hereinabove, we consider it unnecessary to accord additional consideration to the other arguments offered by the plaintiff in her attack upon her grandmother's will.
For the foregoing reasons, the judgment of the lower court is affirmed. All costs of these proceedings are to be paid by the defendants herein.
Affirmed.
NOTES
[1] The facts hereof were stipulated by the litigants.
[2] The last testament of Mrs. Lilly Weir Simms provides that if any legatee or devisee contests it or by legal procedure interferes with the handling of the estate, then that legatee or devisee shall take nothing under her `will or out of her estate. For this reason, Kenneth Franzheim, II, has appealed only in his capacity as executor and trustee, and not individually. For the same reason Mrs. Lilly Franzheim McCullar has appealed only in her capacity as provisional administratrix.
[3] The plaintiff is not a legatee under either her grandmother's or her mother's will, and thus must depend entirely upon her rights as forced heir.
[4] 12 La.Ann. 70, 15 La.Ann. 700 (1860).
[5] See also Anderson v. Pike, 29 La.Ann. 120, where an attack on a substitution by a third person foreign to the testament in question was sustained.
[6] 218 La. 795, 51 So.2d 73 (1950).
[7] This decision as to the morality and justice of fidei commissa was apparently deduced from the premise that the Trust Act then in existence gave more respectability to a fidei commissum than existed in former times.
[8] Morris v. Abney, 135 La. 302, 65 So. 315.
[9] See also Succession of Le Blanc, 128 La. 1055, 55 So. 672.
[10] This is true of all defendants except Mrs. Lilly Franzheim McCullar.
[11] Art. 1, LSA-Code of Civil Procedure.
[12] It should be specifically noted that Art. 2931 of the LSA-Code of Civil Procedure gives Louisiana courts power to hear an action to annul a probated testament. This is true even if the succession representative has been discharged. Moreover, the mere fact that this is an ancillary proceeding does not change this rule, since ordinary succession procedure applies to ancillary succession proceedings. See LSA-Code of Civil Procedure Art. 3401.
[13] Mrs. Lilly Franzheim McCullar is a resident of Louisiana.
[14] 95 U.S. 714, 24 L.Ed. 565 (1877).
[15] 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
[16] 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
[17] It is reasonable in our opinion that the mere qualification as an executor in an ancillary proceeding of itself subjects a person in his official capacity to the process of the ancillary state. See Atkinson v. Rogers, 14 La.Ann. 633; Hargrave v. Turner Lumber Co., 194 La. 285, 193 So. 648.
[18] Art. 44, Code of Civil Procedure.
[19] The plaintiff does contend that certain portions of the will are invalid because they incorporate by reference the provisions of extraneous inter vivos trusts.
[20] LSA-R.S. 9:2401.
[21] LSA-Civil Code Art. 10; Succession of Fisher, 235 La. 263, 103 So.2d 276; Succession of Martin, La.App., 147 So.2d 53.
[22] LSA-Civil Code Art. 470. There is an analogous problem in common law states which recognize the concept of the chattel real.
[23] See Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846; Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336; and Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369.
[24] Act 205 of 1938; Act 6 (2d Ex.Sess.) of 1950, now LSA-R.S. 9:1105; and Art. 3664 of the LSA-Code of Civil Procedure.
[25] Supra.
[26] Supra. See also Arnold v. Sun Oil Company, supra.
[27] LSA-R.S. 9:1105, which provides as follows:

"Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder of these rights, without the concurrence, joinder, or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land. This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate."
[28] See Little v. Haik, 246 La. 121, 163 So.2d 558; Reagan v. Murphy, 235 La. 529, 105 So.2d 210; Dixon v. American Liberty Oil Company, 226 La. 911, 77 So.2d 533; Perkins v. Long-Bell Petroleum Company, 227 La. 1044, 81 So.2d 389; Tinsley v. Seismic Explorations, Inc., 239 La. 23, 117 So.2d 897.
[29] See Henry v. Jean, 238 La. 314, 115 So.2d 363.
[30] LSA-R.S. 9:1105 and LSA-Code of Civil Procedure Art. 3664, supra.
[31] See cases cited above in footnote 11.
[32] See also Davidson v. Midstates Oil Corporation, 211 La. 882, 31 So.2d 7, and Arkansas Louisiana Gas Co. v. R. O. Roy & Co., 196 La. 121, 198 So. 768, which expressly classify mineral leases as incorporeal immovables.
[33] See McKee v. Eskrigge, La.App., 139 So.2d 545.
[34] LSA-R.S. 9:2252.
[35] LSA-R.S. 9:1723.
[36] See Succession of Forstner, 186 La. 577, 173 So. 111; Succession of Manning, 185 La. 894, 171 So. 68; Succession of Marion, 163 La. 734, 112 So. 667; Pires v. Youree, 170 La. 986, 129 So. 552.
[37] See Louisiana Constitution of 1921, Art. IV, Sees. 15, 16.
[38] Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223.
[39] 232 La. 213, 94 So.2d 38.
[40] La.App., 135 So.2d 679.
[41] Succession of Thilborger, 234 La. 810, 101 So.2d 678.
[42] Succession of Rougon, 223 La. 103, 65 So.2d 104.
[43] Hoggatt v. Gibbs, 12 La.Ann. 70, 15 La.Ann. 700.