Virginia Marion, who was unmarried, died testate in the city of New Orleans, on June 17, 1921. Her nearest living kin were two brothers, Albert J. and Amable E. Marion. Her will, which is dated January 1, 1921, was probated, and, after this was done, the two brothers, whom we shall hereafter refer to as plaintiffs, filed a petition in this, the succession of their sister, attacking certain dispositions in her will, as being null and void.
The first disposition that the testatrix made is a legacy of $300 for the benefit of a blind woman. This disposition is not attacked, but the second and third are. These read as follows:
 "To Reverend Father William Martin, Vicar Provincial of the Dominican order, now living in Hammond, La., I leave all my diamonds and gold jewelry, except my watch. The diamonds and gold are to be used in the making of a chalice.
 "I also leave to Father Martin the sum of three hundred dollars ($300) to be used for the making of the chalice. On this chalice is to be engraved: In memory of Etienne and Virginia Marion."
The disposition of the diamonds and Jewelry is attacked on the ground that the testatrix was thereby disposing of property which did not belong to her, but which belonged to the separate estate of the mother of the testatrix and of plaintiffs, or to the community that existed between their mother and father. The disposition of the $300 is apparently attacked *Page 737 
on the ground that the disposition of the jewelry and diamonds being null, the disposition of the $300 falls with it. The position of Father Martin and of the testamentary executors is that the testatrix possessed the jewelry and diamonds in full ownership, and, if not, then that she owned an interest in them, and that the disposition is valid to the extent of that interest.
The record discloses beyond dispute that a part of the jewelry comprised in this bequest belonged in full ownership to the testatrix. The record also discloses that the remainder of the jewelry and the diamonds once belonged to the separate estate of the mother of the testatrix and of plaintiffs; that when Mrs. Marion died, which was in 1995, she died intestate, leaving, as her heirs, three sons and a daughter, the latter being the present testatrix, and that later, to wit, in 1910, one of the sons, Etienne, died testate, making the testatrix herein his universal legatee.
From the foregoing it would seem that, if the testatrix did not own in full ownership the jewelry and diamonds that once belonged to her mother, she was at least the owner of an undivided half interest therein, having acquired one-fourth of the whole by inheritance from her mother, and one-fourth by the will of her deceased brother.
The remaining one-half undivided interest, which it appears from the evidence adduced was vested in plaintiffs, does not appear to have been divested. All that appears to support a title in full ownership in the testatrix is that she had possession of the jewelry and diamonds from the death of her mother in 1885 until her own death in 1921, a period much longer than necessary, so far as time is concerned, to maintain a title by prescription, and the additional facts that the testatrix altered some of the jewelry, and that none of it was inventoried in the successions of the mother and father of the testatrix. *Page 738 
The contention of Father Martin and the testamentary executors seems to be that the testatrix, having possessed the jewelry and diamonds for so long a time, under the circumstances mentioned, should be deemed to have been the owner thereof in full ownership at the time of her death. No plea of prescription, however, has been filed by Father Martin or the testamentary executors in support of a title to the whole in the testatrix by prescription, and without such plea we are not in position to hold that she acquired title by that method. Moreover, had such a plea been filed, the evidence in the record would not have justified us in sustaining it, for the evidence shows, as appears from that of plaintiffs, which is uncontradicted, that the testatrix, having been the only daughter of her mother and father, and the only sister of plaintiffs, was permitted to keep and wear the jewelry and diamonds, as family heirlooms, plaintiffs still retaining their interest therein. This evidence is not overcome by the fact that the testatrix caused alterations to be made in some of the jewelry, and by the remaining circumstance mentioned above. So far as relates to that circumstance, it may be said that it does not appear that the jewelry belonged to the father of the testatrix, but to the latter's mother, and hence, doubtless for that reason, it was not inventoried in the father's succession, and, as to the mother of the testatrix, it appears that her succession was never opened.
Our conclusion is that plaintiffs have an undivided half interest in so much of the jewelry as we have found belonged to her mother. This jewelry, to be specific, consists of the various pieces of gold jewelry and the diamonds which, in the inventory taken in this succession, has words opposite the articles composing it which indicate that plaintiffs have an interest in these articles.
As relates to the position of plaintiffs, they *Page 739 
rely, in part, on article 1639 of the Civil Code. to annul the disposition made of the jewelry. This article provides that —
 "When the testator has bequeathed a thing belonging to another person, the legacy shall be null, whether the testator knew or knew not that the thing did not belong to him."
As the testatrix owned a one-half interest in the jewelry and diamonds which once belonged to her mother, she unquestionably had a right to dispose of that half interest, for there was nothing in the article of the Code cited, or in any other law of this state, to have prevented her from doing so. That she was the owner of a half interest in the jewelry, and had a right to dispose by last will and testament of that interest, plaintiffs in their brief concede, but they contend that the legacy comprises only such gold jewelry and diamonds as were owned in full ownership by the testatrix, and not in common with others. The provision, making the disposition, does not so read. It reads: "I leave all my diamonds and gold jewelry, except my watch," to Father Martin, for the purpose stated above. It is immaterial under a clause so reading, so far as relates to the nullity of the entire disposition, whether the testatrix owned the diamonds and jewelry in full ownership or not. Whatever interest she owned in them she conveyed by the will. Where one owns property in indivision with another, and bequeaths the entire property to some third person, the disposition to the extent of the testator's ownership is valid, unless the disposition is so worded as to prevent its being executed in part. Such seems to be substantially the view of some of the commentators on the French Code with reference to an article in that Code (No. 1021) similar to our article No. 1639. 21 Demolombe, No. 694; 7 Aubry et Rau, p. 155; 14 Laurent, No. 137. A reason why the disposition of the whole, when the testatrix owned only an undivided interest in the property, would not be valid, *Page 740 
even as to the interest which she owned, would exist in this instance, if the jewelry could not be divided in kind, for a careful reading of the clauses by which the disposition is made will show that the testator intended that the particular gold out of which her jewelry was made, though not necessarily without using other gold, should be moulded into the chalice, and that the particular diamonds which she owned should be set in it. Hence, as it develops that the testatrix did not own in full ownership all the jewelry included in the disposition, a partition in kind is necessary in order to accomplish the purpose of the disposition of the part owned in common. The jewelry comprised in the disposition in which plaintiffs have an interest consists of various pieces, some of which are set with diamonds, and, in addition, several loose diamonds, and, so far as we are able to see, a partition thereof in kind can be effected. We therefore think that the disposition is valid as to the jewelry included in the disposition, and owned by the testatrix, at the time of her death, in full ownership, and also to the extent of the one-half interest which she owned in the remainder thereof, but no further. Since the disposition of the jewelry is valid to that extent, the bequest of the $300 to execute the purpose of the disposition is also valid, for the purpose of the bequest may be accomplished.
The next dispositions which are attacked are two, reading as follows:
 "I wish placed in the Delgado Memorial my cameo brooch with the subject of Autumn by Tho Waldson carved upon it. (2) My Wedgewood vases on dining room mantel. (3) The three vases in the parlor mantel, also the cashmere or Paisley shawl. These are to be called the `Amanda Virginia Marion Collection.'
 "To the Historical Museum in the Cabildo, I leave the Mallard bedroom set, consisting of four poster bed, large armoire, dresser, and wash stand, also the Mallard parlor set, and dining room table, side board, and serving table. These once belonged to Mandeville de *Page 741 
Marigny. I wish the collection called the `Amanda 
Virginia Marion Collection.'"
Plaintiffs urge that these dispositions are null and void for the same reason upon which they base their attack against the disposition of the jewelry. The evidence touching the ownership of the articles comprised in these dispositions is substantially the same as that relating to the ownership of the jewelry in which plaintiffs claim an interest; in other words, the evidence shows that at the time of the death of the testatrix plaintiffs were the owners of an undivided half interest in the articles comprised in these bequests, owning the articles in common with the testatrix, they and the testatrix having acquired the property in common by inheritance, and plaintiffs not having parted with or lost the interest thus acquired by them.
With reference to these bequests, it should be observed that, not unlike the bequest of the jewelry, the testatrix intended that the particular articles here disposed of should pass to the legatees, to be used by them for a particular purpose. The cameo brooch, vases, and shawl were intended to go to the Delgado Memorial, to be used to form a collection to be known as the Amanda and Virginia Marion Collection, and the furniture, once owned by Mandeville de Marigny, was intended to go to the Historical Museum to form another collection to be known by the same name as the one to the Delgado Memorial.
We are able to sustain the disposition of the jewelry to the extent of the interest of the testatrix therein, notwithstanding the particular use to be made of the gold and diamonds in the jewelry, because we found that the jewelry could be divided in kind, and the purpose of the bequest executed. However, we fail to find that the articles willed either to the Delgado Memorial or to the Historical Museum can be divided in kind, even if by so dividing them this would suffice to carry out the purpose of the testatrix in making the bequests. *Page 742 
The only way in which these articles can be partitioned is by licitation, and such method would defeat the very purpose that the testatrix had in view in making these bequests — that of forming collections, to consist of these articles, the collections to be known by certain names. Since, due to the ownership of the property in common with others, these dispositions cannot be executed, so as to carry out the purpose of the testatrix in making them, we feel constrained to declare the dispositions null and void, and not such as may be carried into effect under article 1519 of the Civil Code by eliminating impossible or illegal conditions.
The remaining disposition attacked is one to Miss Florence Loeber in trust, and reads as follows:
 "As my two brothers and their families are in comfortable circumstances, and would have no need of the little I leave, and as my deceased brother Etienne refused all shares to my father's and mother's estate, I wish to leave the remainder of my estate to form a memorial in which his name and mine will be linked forever, as we were in life and shall be in death.
"Before establishing this memorial I wish Miss Florence Loeber to deposit with the Metairie Association a sufficient amount of money to insure perpetual care of my tomb in Metairie Cemetery; to have my name carved on my tomb under my brother's with the words: "United at Last," and to give to F.T. Howard school No. 1, ($100) one hundred dollars for a fund for sick children or for needy ones.
"After this has been done, I leave to Miss Florence Loeber my entire estate, including my home 618 Audubon St., with all that is left of its contents. This entire estate is left to Miss Florence Loeber in trust for the Catholic Women's Club to establish a memorial linking my brother Etienne's name and mine.
"If possible, I desire that my home be used for any needy members or protegees of the club, for recuperation or rest. This is only a suggestion. The estate is left in trust to Miss Loeber to be used as her judgment, her conscience, and her love of humanity shall dictate.
 "In case Miss Florence Loeber shall die before me, I leave my estate in trust to the president of the Catholic Women's Club in *Page 743 
trust of the club, with the same provisions as stated above."
We understand both from the pleadings and from plaintiffs' brief that the provisions in the will relative to the care of the tomb of the testatrix and the legacy of $100 to F.T. Howard school No. 1 are not attacked, but that the disposition in trust to Miss Loeber is attacked, and that the attack is made on the grounds that the disposition is null, because it is a fidei commissum, and also because it is a prohibited substitution.
Article 1520 of the Civil Code reads in part, as follows:
 "Substitutions and fidei commissa are and remain prohibited.
 "Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee. * * *"
A substitution is created where the testator wills property to one, and at the death of the first legatee the property is to pass to another, designated by the testator. Succession of Meunier, 52 La. Ann. 79, 26 So. 776, 48 L.R.A. 77; Succession of Weller, 107 La. 466, 31 So. 883; Succession of Reilley,136 La. 347, 67 So. 27. The will, with reference to the disposition under attack, creates no such condition, and therefore does not create a substitution. However, it does, with reference to that disposition, create a fidei commissum or trust; Miss Loeber being named as trustee, to execute the fiduciary bequest.
Plaintiffs concede that, ordinarily, where the testator, in disposing of his property, creates a fidei commissum or trust, the words creating the trust are to be reputed as not written, and full effect is to be given to the disposition to the legatee; the trust feature of the will alone being eliminated. They, however, contend that there are instances where the entire disposition must be annulled, and not merely its trust feature, as for example in the Succession of Hall, 141 La. 860, *Page 744 75 So. 802, on page 865 of the Louisiana Reports, where it is said that the entire disposition will be annulled, when to eliminate merely the trust feature would be to give the property to one in full ownership, whom the testator never intended should thus possess it, and contend that this case presents an instance where the entire disposition must be annulled and not merely the trust feature thereof.
Without inquiring into the merits of the foregoing position, taken by plaintiffs, and conceding for the purpose of this case that, if the trust feature of the disposition in this instance must be reputed as not written, the entire disposition must be annulled, we may say that, in our view, the entire disposition attacked, including the trust feature thereof, is valid.
Since the adoption of the present Civil Code in 1870, three acts have been passed by the Legislature permitting the creation of fidei commissa or trusts, the first of which is Act 124 of 1882; the second, Act 72 of 1918; and the third, Act 107 of 1920. Section 16 of article 4 of the Constitution of 1921 imposes a restriction on the power of the Legislature to authorize the creation of trust estates or fidei commissa, but the acts cited above are not out of accord with this restriction, at least in so far as they may affect this case, and, moreover, the constitutional section cited can have no effect here, because all rights under the will became vested by the death of the testatrix before the Constitution of 1921 became effective.
In our opinion, the disposition now under consideration is sanctioned by Act 72 of 1918, cited above, the pertinent parts of which read as follows, to wit:
 "Section 1. Be it enacted by the General Assembly of the state of Louisiana, that it shall be lawful for any one to make a donation inter vivos or mortis causa of any description of property to a trustee or trustees for educational, charitable or literary purposes generally, without designating the particular purpose to be fostered or aided, and in such cases to permit *Page 745 
the trustee or trustees to appoint, create or change, from time to time and as often as they may deem wise, the beneficiary of such trust estate or any part thereof; provided, however, that the donor may, at his pleasure, name and appoint the particular use to be made of the donation and may impose such conditions not contrary to law as he may desire.
"Sec. 2. Be it further enacted, etc., that when such gifts shall be made to individual trustees, the trustees named in the act of donation and their successors or substitutes, or such of them as are willing and may accept the trust, shall, upon complying with the laws of this state, relative to the organization of corporations for literary, scientific, religious and charitable purposes, constitute a body corporate with the power of continuous succession and unlimited duration, and with all the powers conferred upon corporations by said laws or customs; provided, however, that the requirement of said laws as to the number of persons necessary for the formation of a corporation shall not apply to such trustees; and provided further, that if any of the trustees will not or cannot accept the trust, then such of those named as are willing may accept, and, in the manner prescribed in the act of donation, proceed to fill the vacancies up to the required number. * * *
 "Sec. 7. Be it further enacted etc., that the provisions contained in the Revised Civil Code, or other laws of this state relative to substitutions, fidei commissa or trust depositions, shall not be deemed to apply to or in any manner affect donations made for the purpose and in the manner provided by this act, and all laws or parts of laws conflicting with the provisions of this act are repealed in so far as regards the purposes of this act, but not otherwise."
This act clearly authorized the creation of trust estates for educational, charitable or literary purposes. It even dispenses with the necessity of the testator's naming the particular purpose to be fostered by the disposition, and makes it possible for him to arrange matters so that the trustee named by him may designate the particular purpose to be aided, and may name, create, or change from time to time the beneficiary of the trust estate. Primarily the act was intended to provide for the creation of trust estates for the purposes *Page 746 
named, without designating a beneficiary or legatee, but leaving it to the trustee named by the testator to select from time to time the beneficiary. However, the act, we think, contemplates that the testator may designate the beneficiary or beneficiaries, as well as prescribe the particular use to be made of the bequest, without in any sense contravening its provisions.
Interpreting as a whole that part of the will herein making the disposition in question, it appears to us that the testatrix intended to will and did will the residue of her property in trust for the Catholic Women's Club, to establish a memorial for her and her deceased brother, the kind of memorial to be established to be left to the discretion of the trustee as the latter's judgment, conscience, and love of humanity may dictate.
In so disposing of the residue of her property, the testatrix has not gone beyond or failed to comply with the law, unless it be that she has not stated that the memorial to be established shall be devoted to one or more of the purposes for which the creation of trust estates is permitted by the act; that is, for charitable, educational, or literary purposes. While she has not expressly stated what her intentions were in this respect, still we have no difficulty in ascertaining from the will that her desire was that the residue of her estate should be used to establish a memorial to be devoted to some charitable purpose. The general tenor of the will indicates that she was charitably disposed. Moreover, in making the disposition in question, when she vested the trustee with discretion as to the use to be made of the residue of her estate, she directed that it be used (in establishing the memorial) as the trustee's judgment, conscience, and love of humanity shall dictate. The expression, "Love of humanity," used in the foregoing direction, shows that the testatrix intended that the bequest should be used for some charitable purpose in establishing *Page 747 
the memorial. Again, in disposing of this part of the estate she willed it in trust to a trustee for the Catholic Women's Club, thus making that club the beneficiary of the trust. The Catholic Women's Club is a corporation created largely for charitable purposes. The purposes of the corporation are declared in its charter to be as follows, to wit:
 "The objects and purposes of this corporation are hereby declared to be: To promote the welfare and happiness of women, and especially women engaged in business, and that to that end to secure and make as homelike as possible a place or places of convenient access where women may come for rest, instruction and entertainment, and where they may obtain safe and convenient lodging and wholesome meals for moderate prices. Its purpose is to serve the public good by extending sympathy, aid and comfort to all women who are striving to help themselves. It shall seek to make life easier to those who are facing its cares and responsibilities and who are endeavoring to faithfully discharge the duties of their respective callings. Its object is to promote and establish any form of benefaction which may at any time become necessary to the needs of women."
In making this disposition, the testatrix evidently had in mind the objects and purposes of the Catholic Women's Club, for in her will she made the following suggestion: "If possible, I desire that my home be used for needy members or protégées of the club for recuperation or rest" — thus indicating not only the kind of memorial that would be agreeable to her, but that she expected one to be established for charitable purposes to aid the Catholic Women's Club in carrying out its objects.
Before closing it may be said that, in our view, there is no merit in the contention made by plaintiffs that, since the testatrix, in making this disposition, has named only one trustee, who is a natural person, and not a corporation, and since the act of 1918 contemplates that, when natural persons are appointed trustees, they shall form themselves into a *Page 748 
corporation for the purpose of administering and executing the trust, and since one person cannot organize himself into a corporation, the disposition does not come within the statute, and is therefore void. The statute clearly authorizes, as appears from the first section thereof, the making of the disposition to one trustee and does not require that the trustee named shall be a corporation, but contemplates that the trustee may be a natural person. It is true that the act in the second section thereof provides that, when natural persons are named as trustees, they shall, upon complying with the laws relative to the organization of corporations for charitable and other purposes, constitute a corporation, but the act is rather permissive than mandatory in this respect, and, moreover, distinctly provides that the requirements of those laws as to the number of persons necessary for the formation of a corporation shall not apply. Our conclusion is that this disposition is valid.
The trial court rendered judgment annulling the will, in so far as the legacies to Father Martin, the Delgado Museum, the Historical Museum, and the one to Miss Loeber in trust for the Catholic Women's Club are concerned, and also rendered judgment recognizing plaintiffs as the legal heirs of the deceased and entitled to the property comprised in the dispositions annulled. Since the greater part of the judgment rendered is contrary to the views here expressed, we shall, for the purpose of convenience, set aside the entire judgment rendered, and recast it.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and that plaintiffs Albert J. and Amable E. Marion have and recover judgment annulling the bequests to the Delgado Museum and to the Historical Museum, and recognizing them as entitled to the property included in said bequests, and annulling to the extent of the undivided one-half interest thereof that part of *Page 749 
the property included In the bequest to Father Martin which plaintiffs acquired by inheritance from their mother or parents, and recognizing them as the owners of said half interest, the part referred to, in which they have a half interest, being indicated in the premises by reference to the inventory taken herein, and it is further ordered and decreed that in all other respects plaintiffs' demands be rejected and disallowed, they to pay the costs of this appeal.
On Application for Rehearing or for Amendment of Decree.