196 So.2d 265

Succession of Denis A. BARRY.

No. 48340.

Feb. 20, 1967.

Rehearing Denied March 27, 1967.

Clay, Coleman, Dutrey & Thomson, Jacob J. Meyer, New Orleans, for applicants.

Harry Nowalsky, George E. Konrad, New Orleans, for defendant-respondent.

Benj. W. Miller, Bogalusa, for amicus curiae.

FOURNET, Chief Justice.

Denis A. Barry died testate on December 8, 1963, leaving surviving him his widow, Ruth Herron Barry, and two children by a previous marriage.[1] In a statutory will[2] executed July 7, 1960, decedent provided for various particular legacies, including $10,-000 to his sister, Lillian M. Barry Walker, and $5,000 to his niece, Adele Walker Dominguez. He left the remainder of his estate to his wife, naming his partner, Clifton A. Morvant, to be executor with full seizin and without bond.[3] In so far as pertinent here, as reflected by codicils to the will recited in Footnote No. 3, the will was modified by reducing the legacies to his sister and niece to $7,500 and $2,500 respectively, and his wife was substituted as executrix.

On December 11, 1963, Mrs. Barry opened the succession of her late husband and secured an order of the district judge authorizing a search for a will among his personal effects and bank box, and two days later she filed a petition for the probate of the above described will, as modified by the three codicils, at the same time qualifying as testamentary executrix. She continued

1. The decedent's two children, Denis A. Barry, II, and Theone Mae Barry Maher, each received 1/4 th of the estate under the will of July 7, 1960, and it is conceded in oral argument their rights have been compromised and form no part of this litigation.

2. Act 66 of 1952, as amended by act 123 of 1964, provides for the making of a statutory will. These provisions are incorporated in R.S. 9:2442.

3. To this will were added three olographic codicils providing as follows:
   (a) "This is a codicil to my will dated July 7, 1960. I hereby revoke the legacy of the usufruct of our home, 1620 Lakeshore Drive, to my wife Ruth H. Barry. New Orleans, La
   "May 8, 1961.
   "Denis A. Barry"

   (b) "This is a codicil to my last will and testament. I am withdrawing and cancelling the bequest to Family Service of New Orleans in the sum of $1,000 and the bequest to Edmunite Mission in Selma, Alabama, also in the sum of $1,000 as expressed in my last will.
   "The legacy to my sister, Lillian M. Barry Walker is hereby reduced from the sum of $10,000.00 to the sum of $7,-500.00, and the bequest to my niece, Adele Walker Dominguez, is reduced from the sum of $5,000.00 to the sum of $2,-500.00. New Orleans, Louisiana,
   "July 27, 1961
   "Denis A. Barry"
   "15 January 1962
   (c) "I hereby change my will and I hereby appoint my wife, Ruth Herron Barry as sole executrix with full seizen (sic) and without bond.
   "Denis A. Barry"

uninterruptedly to manage the affairs of the estate until some 16 months later when she filed for probate an instrument [4] entirely written, dated, and signed by her late husband, which she alleged was since found among her effects. She secured an ex parte order to have the same admitted to probate. Mrs. Lillian M. Barry Walker and Mrs. Adele Walker Dominguez, legatees under the will of July 7, 1960, as modified by the codicil dated July 27, 1961, filed an opposition thereto, contending the document was not a will but merely reflected the precatory wishes of the decedent. The trial court maintained the opposition and rendered judgment accordingly. The matter is now before us on a writ of certiorari granted (249 La. 732, 190 So.2d 240) on application of the opponents to review the judgment of the Court of Appeal for the Fourth Circuit reversing the judgment of the lower court and holding the document was a valid will. 188 So.2d 124.

In reversing the judgment of the district court, the appellate court declared it could not accept the suggestion that the words

"wish" and "desire" in the document of January 2, 1962, were merely precatory suggestions, and, consequently, concluded it was a valid will, for it evidenced an animus testanti; and, inasmuch as the dispositions therein were incompatible with the legacies in the prior will, the prior legacies were tacitly revoked.

The opponents in their application for writs, and also in argument, both orally and in brief, contend the appellate court erred in basing its conclusion on the first paragraph of the document in dispute, without giving due consideration to the document as a whole, which clearly demonstrates it was not dispositive, but merely expressed the precatory wishes of the decedent.

■■ A testator's mere wishes and requests are viewed as precatory suggestions which are not binding in law. Succession of Hall, 141 La. 860, 75 So.2d 802; Girven v. Miller, 219 La. 252, 52 So.2d 843; Succession of Maguire, 228 La. 1096, 85 So.2d 4. And it is well recognized that while the words "wish" and "desire" may be used in

---

4.                                        "2 Jan 1962
    "To whom it May Concern:
      "It is my wish and desire, that upon my death, all my assets, including personal effects and bric-a-brac, be turned over to my wife, Ruth Herron Barry.
      "During the past several years, I have been ignored by my children, Mrs. James Masher Jr and Denis A. Barry II, on such occasions as my birthday, Father's Day and Christmas, as well as during the time that I was a patient in the Baptist Hospital suffering from heart attacks.

    "I have provided both children with college educations, have taken them on several expensive trips, and made gifts to them on special occasions.
    "The attention and devotion of my wife, Ruth Herron Barry, during our life together, particularly during my many instances of ill health, as contrasted with the neglect of my two children, is the basis for the request contained in the first paragraph above.
                        "Denis A. Barry"

such a way as to constitute a part of a precatory suggestion, these same words, in the context in which they are used, may also be mandatory or dispositive, as was very aptly observed by the Court of Appeal for the Fourth Circuit in Heikamp v. Succession of Solari, La.App., 54 So.2d 347, citing as authority Jacob v. Macon, 20 La. Ann. 162; Dufour v. Deresheid, 110 La. 344, 34 So. 469, and Succession of Hall, 141 La. 860, 75 So. 802. To this same effect, see, also, the following decisions from other circuits: Oroszy v. Burkard, La.App., 158 So.2d 405 (third); and Succession of Gafford, La.App., 180 So.2d 74 (second).

■ In the Solari case the court observed that no " * * * case has laid down or could lay down a fixed rule that the word 'wish' should always be interpreted as disposing of property, or, on the other hand, that it should always be interpreted as precatory. *The entire context of every will must be taken into consideration and from the whole document it must be determined whether the expression of the wish was intended to be merely precatory or was intended by the testator to actually dispose of property."* See, also, Succession of Allen, 48 La.Ann. 1036, 20 So. 193; 55 Am.St.Rep. 295; Gueydan v. Montagne, 109

La. 38, 33 So. 61; Succession of Fath, 144 La. 463, 80 So. 659; Succession of LaBarre, 179 La. 45, 153 So. 15; Succession of Price, 202 La. 842, 13 So.2d 240; Succession of Lacoume, 205 La. 511, 17 So.2d 726; Succession of Kamlade, 232 La. 275, 94 So.2d 257; and Thompson on Wills, Section 215, at page 333.[5] (The emphasis has been supplied.)

■ A careful study and analysis of the instrument as a whole, giving due consideration to every clause and paragraph thereof, clearly shows that it was not a testamentary disposition. Although it was dated, written, and signed by the decedent, the contents illustrate the document was not intended as such. While it is true that in the first paragraph the author expressed his "wish" and "desire" that upon his death all of his assets be turned over to his wife, in the last paragraph he specifically labelled the first paragraph his *"request,"* explaining the basis therefor by alluding to the attention and devotion of his wife during their life together, and particularly during his many illnesses, as contrasted by the neglect of his children. Although the document is addressed "To whom it May Concern," it was obviously directed to the conscience of his children, as it calls to their attention

---

5. The author states the rule to be that "When any *particular paragraph* which if considered alone indicates an intention contrary to the intention ascertained from the *whole will*, the latter intention must prevail." (The emphasis has been supplied.)

that in spite of all the things he had given them, they had ignored him for several years on such occasions as his "birthday, Father's Day and Christmas," as well as during the time he "was a patient in the Baptist Hospital," thus imploring them to relinquish the portion of their legitime in favor of his wife.

That the decedent did not intend the document of January 2, 1962, to be dispositive is manifest by his subsequent action in writing the third codicil to his will on January 15, 1962, thirteen days after he wrote the disputed document. While both were entirely dated, written, and signed by the decedent on his personal stationery, he placed the last codicil with his effects where the will of July 7, 1960, and the other two codicils were found, not with his wife's effects, as was the case with the disputed document.

We are fortified in this conclusion by the fact that the decedent, as reflected in the preparation of the three codicils, as well as the document in dispute, was an intelligent, educated, and well informed person and obviously conscious of his children's right to their legitime under our law, for which he had provided in his will of July 7, 1960; hence, in expressing his "wish" and "desire" in the first paragraph of the disputed document, he not only specifically labelled the same to be a "request" in the fourth paragraph, but, 13 days later, in preparing the third codicil, he recognized the existence of the only will he had ever confected, i. e., the statutory will of July 7, 1960, stating, "I hereby *change my will* and appoint my wife, Ruth Herron Barry as sole executrix with full seizen (sic) and without bond." We think, additionally, that the language used in the third codicil clearly demonstrates that the decedent in preparing the same did so with the statutory will before him, for he not only expressly declared he was changing that will by substituting his wife in place of his partner as the one to execute it, but he also used the identical words found in the statutory will, i. e., "with full seizen (sic) and without bond." (The emphasis has been supplied.)

The fallacy of the argument of counsel for the proponent, that the instrument in question, even if unenforceable as a will, nevertheless resulted in a tacit revocation of the legacies provided for in the statutory will, lies in the fact that the decision of this court relied on for the support thereof (Succession of Ryan, on rehearing, 228 La. 447, 82 So.2d 759), was based upon an instrument that, although invalid as to the prohibited substitution found therein, was, in fact, a will in valid form, whereas, in the case at bar, the instrument is in fact

not a will, but merely a precatory suggestion of the decedent.

In the Ryan case the court, on rehearing, after quoting from Revised Civil Code Articles 1691, 1692, and 1693,[6] dealing with provisions for the revocation of testaments in Section 6 of Chapter 6, under the heading "Of Dispositions Mortis Causa," observed: "The provisions of *the two wills,* in our opinion, are palpably incompatible and conflicting. * * * *each instrument is referred to by the testatrix as her last will and testament."* (The emphasis has been supplied.)

For the reasons assigned, the judgment of the Court of Appeal for the Fourth Circuit is set aside, and the judgment of the district court is affirmed.

HAWTHORNE, J., dissents, being of the view that the judgment of the Court of Appeal is correct and should be affirmed.

HAMLIN, J., dissents for the reasons advanced by HAWTHORNE, J.

6. Article 1691 provides in part: "The revocation of testaments by the act of the testator is express or tacit * * *. * * * It is tacit when it results from some other disposition of the testator or from some act which supposes a change of will. * * *"

    The next article provides: "*The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and*

*clothed with the same formalities."* (The emphasis has been supplied.)

    Article 1693 provides: *"Posterior testaments,* which do not, in an express manner, revoke the prior ones, *annul in the latter (i. e., the "prior ones") only such of the dispositions therein contained as are incompatible with the new ones, or contrary to them, or entirely different."* (The emphasis and material within brackets is supplied.)