DIXON, Chief Justice.
On December 20, 1967 Miss Tracy E. Baker executed a revocable inter vivos trust, transferring to the trustees certain real estate and cash and securities. She named herself and Murphy W. Bell as the trustees during her lifetime; at her death the trust was to be administered by Murphy W. Bell as the sole trustee.
The settlor died on January 18, 1979, leaving no ascendants or descendants. Ruth Addie Baker McQuillon, the surviving sister of the settlor and her closest living relative, was appointed administratrix of the succession on June 26, 1979. She was later appointed dative testamentary executrix on February 24, 1981 after an olographic will written by the decedent dated Au *819 gust 18, 1976 was discovered.[1] On August 1, 1979 Mrs. McQuillon filed suit seeking a declaration that the trust instrument was invalid since it failed to properly designate or identify the beneficiaries of the trust. The executrix argued that while the settlor was identified as the sole income beneficiary during her lifetime, no principal beneficiary was clearly specified. In addition, she alleged that the trust failed to name a principal or income beneficiary after Miss Baker’s death. The trial court held that the trust was valid, but that it terminated at the settlor’s death “as it did not properly name either a principal or income beneficiary after the death of the settlor.” The Court of Appeal affirmed. In the Matter of the Succession of Tracy E. Baker, 417 So.2d 1260 (La.App.1982).
The primary issue is whether the settlor complied with the requirements of the Louisiana Trust Code in the proper designation of the beneficiaries in the trust instrument. Section 5.1, the provision of the trust which is primarily in dispute, reads as follows:
“5.1 At the death of the Settlor, the net income of the property donated herein, or the principal thereof, or any part or portion of both, in the discretion of the trustee, may be used in the following manner:
(a)Annual donations of cash or property to the ISRAEL UNIVERSAL DIVINE SPIRITUAL CHURCHES OR (sic) CHRIST in amounts and at times discretionary with the Trustee, to assist in the maintenance, beautification and upkeep, solely, of the Saint Philip DIVINE SPIRITUAL CHURCH OF CHRIST, THE GEORGIANA GUEST HOUSE, and THE TRACY E. BAKER EDUCATIONAL AND RECREATIONAL CENTER. These institutions are located in Baton Rouge, Louisiana on a tract of land donated by seperate (sic) instrument to ISRAEL UNIVERSAL DIVINE SPIRITUAL CHURCHES OF CHRIST.
(b) A portion of the income from said trust fund, or of the principal, in the discretion of the Trustee, may be used to establish grants for deserving boys and girls, preferably members of SAINT PHILIP DIVINE SPIRITUAL CHURCH OF CHRIST, but not exclusively, who desire to go to college, or to further their education. The Trustee is given the right, in his discretion, to designate the criteria used in making said grants, or fixing the amount thereof; he may create or change, from time to time, and as often as he may deem wise, the criteria for selecting the beneficiaries for this particular class, eligible to receive grants under this section. These grants shall be known as THE TRACY E. BAKER SCHOLARSHIPS.
(c) Annual donations of cash or property, in amounts and manner discretionary with the Trustee, may be given to those organizations, local or national, who work in the area of civil rights, voter registration of Negroes, civic betterment and political education of Negro citizens.”
The executrix contends that a valid trust was not created. She claims that the beneficiaries were not properly designated at the death of the settlor because (1) the language used in the instrument to establish a trust for charitable or educational purposes is merely precatory and thus imposes no obligations on the trustee; and (2) the settlor attempted to give her property to a third person who was to have unlimited discretion in choosing the beneficiaries upon her death, a violation of C.C. 1573.
*820 Murphy W. Bell, the trustee, on the other hand, argues that Section 5.1 has the effect of creating a trust for mixed private and educational, charitable, or religious purposes in accordance with R.S. 9:1951.[2] He argues that some restrictions applicable to private trusts, such as the requirement that all beneficiaries exist and be ascertainable at the creation of the trust, do not apply to charitable donations in a mixed trust.
The lower courts classified this trust as an inter vivos trust as defined in R.S. 9:1734.[3] They held that the trust instrument must comply with the requirements for a revocable inter vivos trust set out in the Louisiana Trust Code. They did not view this trust as one for mixed private and charitable purposes under R.S. 9:1951.
A mixed trust is one that is administered for both charitable and noncharitable purposes. R.S. 9:1951. Charitable purposes, or “pious uses” as they are sometimes referred to, are properly defined in broad terms. They include “not only the encouragement and support of pious and charitable institutions, but those in aid of education, and the advancement of science and the arts. They are viewed with double favor by the law on account of their motives for sacred usages and their advantage to the public weal.” Succession of Villa, 132 La. 714, 717, 61 So. 765, 766 (1913). See Succession of Tilton, 133 La. 435, 63 So. 99 (1913) and Succession of Meunier, 52 La.Ann. 79, 26 So. 776 (1899).
The executrix argues that a mixed trust was not created since no charitable beneficiaries are clearly designated in the trust. In addition, she maintains that the trustee was not even bound to perform any general charitable, educational, or religious acts since the settlor failed to specify that the trust was for charitable or educational purposes.
Section 5.1 states in pertinent part that “the net income ... or the principal ... or .. . both, in the discretion of the trustee, may be used in the following manner ...” (Emphasis added). The executrix asserts that this merely precatory expression imposes no obligation on the trustee to transfer the trust property to beneficiaries — he may abide by the recommendations of the settlor, but is not bound to.
Precatory words are mere wishes and suggestions, which are not binding in law. Succession of Barry, 250 La. 435, 196 So.2d 265 (1967); Succession of Maguire, 228 La. 1096, 85 So.2d 4 (1955). Precatory expressions are words requesting or praying that a thing be done. Wheeler, The Louisiana Law of Charities, 15 Tul.L.Rev. 177, 197 (1941). They have been held to be addressed only to the conscience of the trustee as to what disposition he shall make of the property and are treated as not written. See Girven v. Miller, 219 La. 252, 52 So.2d 843 (1951); Succession of Hall, 141 La. 860, 75 So. 802 (1917); Succession of Reilly, 136 La. 347, 67 So. 27 (1914).
Even though words of request, suggestion or entreaty may be used in such a way as to constitute a precatory expression, these same words may also be mandatory or dispositive depending on the context in which they are used. Succession of Barry, 250 La. at 440-441, 196 So. at 268. To determine whether the wishes and requests of the settlor were meant merely to advise or influence the discretion of the trustee, or were intended to control or direct the disposition of the property, the whole document must be examined. It is helpful, as well, to examine the situation of the parties to discover the intent. Succession of Barry, supra; G. Bogert, The Law of Trusts and Trustees §§ 48 and 324 (2d ed. 1977). An *821 important consideration is the relationship of the settlor to the trustee and to the beneficiaries for whom the trustee is presumably to hold the property in trust.
In this case the settlor did not expressly 'state that the trust was to be dedicated to charitable, educational or religious purposes. However, we have no difficulty in finding that the settlor manifested a charitable intent. Since the settlor named herself the sole income beneficiary during her life, she clearly intended to provide for herself, and then at her death to provide for charitable beneficiaries. In the preamble to the trust instrument Miss Baker specifically stated that the trust was to be administered “for the benefit of Settlor-trustee TRACY E. BAKER, ISRAEL UNIVERSAL DIVINE SPIRITUAL CHURCHES OF CHRIST, and other parties herein after designated subject to terms and conditions hereinafter set forth.” The only other parties designated are those in Section 5.1 of the trust instrument, and the other trustee.
We find that the language contained in Section 5.1 of the trust instrument is dispositive and not merely precatory. While it is true that the settlor used the words “may be used” rather than “shall be used,” from a reading of the instrument as a whole, it is clear that the settlor intended to impose an obligation on the trustee to spend the trust funds only on behalf of the beneficiaries described in Section 5.1. The trust was to remain in existence for fifteen years after the settlor’s death. There was, therefore, a definite period fixed within which the trustee should act.
The evidence makes apparent that the settlor was primarily concerned with the Israel Universal Divine Spiritual Churches of Christ. She had previously donated a tract of land to this religious organization. In the trust instrument the settlor specifically stated that the trust was created for her benefit and that of the Israel Universal Divine Spiritual Churches of Christ. She anticipated annual payments to these churches and to various civil rights organizations, for she mentioned “annual donations of cash or property” to both of these beneficiaries “in amounts and at times discretionary with the Trustee.” She also envisioned a scholarship fund for deserving students, subject to the discretion of the trustee as to the amounts of the grants, the times of distribution, and the criteria to be used to determine the recipients, and instructed the trustee that “these grants shall be known as The Tracy E. Baker Scholarships.”
Contrary to the findings of the lower courts, Section 5.1 of the trust instrument is dispositive and not merely precatory. Interpreting the trust as a whole, the settlor intended for the beneficiaries listed in the instrument to receive the income and the principal of the trust subject only to the discretion of the trustee as to the times of distribution and the amounts to be given, or the selection of the individual beneficiaries.
The settlor desired to help the Israel Divine Spiritual Churches of Christ maintain their various institutions, to assist deserving students in pursuit of their education, and to help further the civil rights movement. These dispositions should be viewed as charitable since they are to foster religious, educational and humanitarian purposes. Because the trust was executed for both private and charitable purposes, the trust created by the settlor is a mixed trust in accordance with R.S. 9:1951.
Those provisions of a mixed trust that are noncharitable in nature are subject to the Trust Code. R.S. 9:1951. The charitable donations, however, are not governed by the Trust Code, but by R.S. 9:2271 through 9:2337, statutes relating specifically to trusts for charitable, benevolent or eleemosynary purposes.
Here, as long as the settlor lived, the trust was to be administered in accordance with the Trust Code. R.S. 9:1951; Oppen-heim, A New Trust Code for Louisiana— Some Steps Toward Its Achievement, 37 Tul.L.Rev. 169, 180-182 (1963). The Trust Code requires that a beneficiary be designated in the instrument. R.S. 9:1802; Op-penheim and Ingram, 11 Louisiana Civil Law Treatise, Trusts § 152. If either a *822 beneficiary of income or of principal is designated, the trust does not fall. R.S. 9:1802, Comment (c). In this case the trust instrument clearly names the settlor as the sole income beneficiary during her lifetime and so complies with the Trust Code.
The validity of the trust provisions contingent on the death of the settlor are to be determined by R.S. 9:2271 through 9:2337. R.S. 9:2271 authorizes the creation of trusts for educational, charitable or literary purposes.[4] The statute does not require the naming of a beneficiary in a charitable trust. The settlor “may permit the trustee or trustees to designate, create, or change, from time to time and as often as they may deem wise, the beneficiary of the trust estate or of any part thereof.” R.S. 9:2271. The statute “even dispenses with the necessity of the testator’s naming the particular purpose to be fostered by the disposition, and makes it possible for him to arrange matters so that the trustee named by him may designate the particular purpose to be aided, and may name, create, or change from time to time the beneficiary of the trust estate.” Succession of Marion, 163 La. 734, 745, 112 So. 667, 671 (1927).
The executrix contends that the trust violates C.C. 1573 in that it authorizes the trustee to choose what interest, if any, the named beneficiaries are to have in the trust, as well as the amount of the distributions and when they will be made.
C.C. 1573, prior to its amendment in 1982, provided as follows:
“The custom of willing by testament, by the intervention of a commissary or attorney in fact is abolished.
Thus the institution of heir and all other testamentary dispositions committed to the choice of a third person are null, even should that choice have been limited to a certain number of persons designated by the testator.”
This code article has no application. R.S. 9:2271 allows the settlor of the trust to permit the trustees in a charitable trust “to’ designate, create, or change” the beneficiaries. Succession of Marion, supra; Pires v. Youree, 170 La. 986, 129 So. 552 (1930); Wheeler, The Louisiana Law of Charities, supra at 188. If a settlor creates a charitable trust, he may empower the trustees to designate the beneficiary of the trust. See Comment, 57 Tul.L.Rev. 123, 135 (1982).
The settlor complied with R.S. 9:2271 in the present case. She vested great discretion in Murphy W. Bell, the sole trustee after her death, to dispose of the income and principal of the trust. She allowed him to choose among the beneficiaries as to the use, the amount, and the manner of disposition of the gifts, of both income and principal of the trust. This latitude on the part of the trustee is specifically permitted under R.S. 9:2271 for charitable trusts.
For the reasons assigned, the judgments of the lower courts are reversed, and there is judgment in favor of the defendant, Murphy W. Bell, and against the plaintiff, Ruth Addie Baker McQuillon, dismissing her suit at her cost.

. On May 11, 1979 Bishop E.J. Johnson, presiding bishop of and acting on behalf of the Israel Universal Divine Spiritual Churches of Christ, filed a petition to probate an olographic last will and testament of the decedent dated August 18, 1976, and a statutory will dated August 23, 1976. Both of these wills contain essentially the same dispositions. The olographic will was probated on June 14, 1979. These probate proceedings were consolidated with the present case on February 24, 1981. Even though the probate proceedings were consolidated with the trust proceedings, the parties did not raise the issue of the validity of the wills in the lower courts (except for a reference in a motion to consolidate filed by Ruth Addie Baker McQuillon on January 15, 1981). Accordingly, the lower courts only resolved the issue of the legality of the trust. Since only the validity of the trust instrument was raised at the trial and appellate court levels, only this issue is before us on review.

. R.S. 9:1951 (as it appeared prior to its amendment by 1972 La.Acts, No. 659, § 1):
“A trust may be created for mixed private and educational, charitable, or religious purposes. The dispositions of such a trust in favor of private beneficiaries are governed by the provisions of this Code; those in favor of other beneficiaries are governed by R.S. 9:2271 through 9:2337 relating to trusts for educational, charitable, or religious purposes. As long as there remains a private beneficiary, the trust shall be administered in accordance with the provisions of R.S. 9:2061 through 9:2173.”

. R.S. 9:1734 provides as follows:
“All trusts not testamentary are considered inter vivos, regardless of the time of creation.”

. R.S. 9:2271 states:
“Any person may make a donation inter vivos or mortis causa to a trustee or trustees either for the benefit of educational, charitable, or literary institutions existing at the time of the donation or thereafter to be founded or for educational, charitable, or literary purposes generally without designating the particular purpose to be fostered. Accordingly, the donor may designate the particular use to be made of the donation or he may permit the trustee or trustees to designate, create, or change, from time to time and as often as they may deem wise, the beneficiary of the trust estate or of any part thereof. The donor may impose in the act of donation any conditions he may desire which are not contrary to law.” (Emphasis added)