532 So.2d 470 (1988)
In the Matter of the SUCCESSION OF Nathalie Lowe FLOWERS.
No. CA 87 0857.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
Writ Denied December 9, 1988.
Doris G. Rankin, Baton Rouge, for plaintiff-appellant Hazel Lowe Kelley.
Hampdon R. White, Baton Rouge, for defendant-appellee First Presbyterian Church of Baton Rouge.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
In this appeal we are faced with three main issues arising out of the interpretation of the decedent's will:
*471 (1) Was there a prohibited substitution in the will thus rendering the disposition to the church invalid?
(2) Did appellant, as sole heir, judicially confess to the judgment of possession, thus eliminating her right to attack the confession?
(3) Was there a conflict of interest by the succession attorney who also represented the sole heir and a disputed legatee regarding the disposition of immovable property.
Testatrix, Natalie Lowe Flowers, died testate on January 1, 1985 in Baton Rouge, Louisiana. Her holographic last will and testament provided for the following:
First: I desire that all my just debts are paid.
Second: I will and bequeath unto my beloved sister, Hazel Lowe Kelley, all of the residue of my property, of which I may die possessed, both real and personal, wherever situated, making her my universal and residuary heirIn the event of my sister's death after mine, the home at 4716 Highland Rd. Baton Rouge, LouisianaI do hereby will bequeath said residence to the First Presbyterian Church North Blvd. Baton Rouge, La. to be known as the Margaret L. Williams home. (Emphasis added)
After her sister's death, Hazel Lowe Kelley contacted Baton Rouge attorney Carlos G. Spaht to help settle her sister's estate. Mrs. Kelley retained Mr. Spaht at the suggestion of Rev. Ricks, a minister at the aforementioned presbyterian church of which she was a member. Mrs. Kelley was unaware that Mr. Spaht was also on the church's Board of Trustees and had been appointed by the church to represent it in the succession.
Mrs. Kelley testified that she and Mr. Spaht retrieved her sister's will from a safe deposit box and that without reading the will to Mrs. Kelley, Mr. Spaht left for his office. Mr. Spaht later contacted Mrs. Kelley to sign some papers. On January 13, 1985, Mrs. Kelley signed the affidavit of verification for the petition to probate the will. On January 23rd, the will was ordered recorded and executed by a District Court Judge. On February 8th, Mrs. Kelley and Mr. Spaht, acting on behalf of the Board of Trustees of the First Presbyterian Church of the City of Baton Rouge, both signed a petition for possession of the estate of decedent. The petition acknowledged that the reference in the will bequeathing the residence to the church was intended to give the church the naked ownership of the decedent's one-half interest in the property, subject to the usufruct for life in favor of Mrs. Kelley. On February 12, 1985, just six weeks after the testatrix's death, a judgment of possession was signed ordering the church be recognized as a special legatee and sent into possession of the naked ownership of a one-half interest in the residence. The remainder of the estate went to Mrs. Kelley, including the other one-half interest in the residence which she rightfully owned as a co-owner prior to her sister's death.
On March 8, 1985, both Mrs. Kelley and Mr. Spaht, who once again was acting on behalf of the church, signed a cash deed selling the residence to a neighbor for the cash price of $66,000.00. This deed specifically provided for the right of inhabitance to Mrs. Kelley for her lifetime. The proceeds of the sale were split in half with Mrs. Kelley and the church each receiving $33,000.00. The church's $33,000.00 was placed in a certificate of deposit with the interest to be credited to Mrs. Kelley's account.
Mrs. Kelley testified that it was not until after the sale of the residence was she given a copy of the will. She then realized she thought she had been tricked and hired another attorney to contest the judgment of possession as rendered. After a trial on the matter, the trial judge rendered judgment in favor of the church and against Mrs. Kelley. It is from this judgment that Mrs. Kelley appeals.

LAW
In reviewing the will before this court it is apparent that although the decedent intended to donate property to the church, she clearly attempted to do so in a prohibited *472 fashion. Louisiana Civil Code Article 1520 reads as follows:
Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.
What is and what isn't a prohibited substitution is not always an easy issue to decide. The courts are asked to interpret the language without the benefit of the presence of the testator. While it is incumbent upon the court to interpret a will in such fashion so that it may be given effect if at all possible, it is also incumbent upon the court to interpret the will as written and not what the court thinks the testator intended to say. Succession of Martin, 262 So.2d 46 (La.App. 1st Cir.), cert. denied, 262 La. 472, 263 So.2d 729 (1972).
The disputed portion of decedent's will is the phrase, "In the event of my sister's death after mine, the home at 4716 Highland Rd. Baton Rouge, La. I do hereby will bequeath said residence to the First Presbyterian Church, North Blvd., Baton Rouge, La....." Prior to this phrase, the testatrix clearly willed and bequeathed all of the residue (after paying her debts first) of her property, both real and personal to her sister, Mrs. Kelley, thus making her the universal and residuary heir/legatee. We are asked to decide whether the disposition, as written, to the church is a prohibited substitution.
We must start from the beginning of both the will itself and the origin of ownership of the home itself. The decedent, Nathalie Lowe Flowers, and Mrs. Kelley were sisters and the only children of their parents. Mrs. Flowers was married once, divorced, and had no children of this marriage. Thus at the death of their parents, Mrs. Flowers and Mrs. Kelley each owned, in indivision, a one-half interest in the property.
At Mrs. Flowers' death, without any forced heirs, the legatee(s) named in her will obtained seizin of the properties left in her estate. Her will states that her bills are to be paid first and then all of her property both real and personal should go to her sister, Mrs. Kelley. It then states, "In the event of my sister's death after mine", and goes on to, "will bequeath", the home to the church. In forming a congruent interpretation of the will and the ownership of the property we find the following occurred. At Mrs. Flowers' death, her real property which consisted of only the one-half ownership of the residence, was inherited by Mrs. Kelley as per the will. Thus Mrs. Kelley then had full ownership of the residence. We interpret the phrase, "In the event of my sister's death after mine", to mean, "when my sister then dies after me ...". This is an attempt by the decedent to give ownership to one, to have and to hold for a lifetime, and then to will it to yet another. This clearly fits the LSA-C.C. art. 1520 definition of a prohibited substitution.
In Maddox v. Butchee, 203 La. 299, 14 So.2d 4 (1943), the supreme court found the following language to be a prohibited substitution, "At my Death I donate and bequeath all the property I then own to my husband Wesley Maddox after his death it is to go to my great niece Johnnie Tilley". We find no distinction between this language and the expression in the decedent's will before us.
Further, testatrix's bequest to the church violates LSA-C.C. art. 1639 in that she is attempting to give full ownership of the residence to a third party via the substitution when she only owned a one-half interest therein. See Succession of Marion, 163 La. 734, 112 So. 667 (1927).
Finding the disposition to the church to be a prohibited substitution, that portion of the will is invalidated and rendered null. Mrs. Kelley is thus the sole legatee mentioned in the will. See Succession of Walters, 261 La. 59, 259 So.2d 12 (1972).

JUDICIAL CONFESSION
The trial judge found that the decedent's will was ambiguous and that Mrs. *473 Kelley and the church compromised the ambiguity by jointly petitioning the court in the petition of possession. He held that this amounted to a judicial confession and applied the rule of law stated in Succession of Williams, 418 So.2d 1317 (La.1982). In Williams, a sister appealed a trial judgment which recognized her as heir to one-half of her mother's estate and recognized her brother's two children as the other heirs, each owning a one-fourth interest. The brother had renounced his share of the succession in favor of his children and the sister had concurred to this in the petition for possession. The supreme court stated although this split of ownership was based on erroneous legal conclusions, the sister was nonetheless precluded from asserting this error as she joined in the pleadings on which the judgment was based.
Appellant argues that this rule is not applicable for two reasons. First, Williams was based upon then LSA-C.C. art. 2291 which provided:
The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It can not be divided against him.
It can not be revoked, unless it be proved to have been made through an error in fact.
It can not be revoked on a pretense of an error in law.
The only escape from a judicial confession is through an error in fact. Appellant argues and the testimony reveals that Mrs. Kelley's vision was poor at the time of signing the pleadings. Further, that by not getting a copy of the will until after the sale of the property, she was misled into signing the documents and thus she did so under an error of fact.
Perhaps the most persuasive law on the matter can be found in Succession of LeBlanc, 128 La. 1055, 55 So. 672 (1911) and Succession of Simms, 175 So.2d 113 (La. App.1965). Both cases held that prohibited substitutions are absolute nullities and cannot be acquiesced to in a proceeding and were subject to being contested.
We find Williams, supra. to be distinguishable from the case before us, thus we hold that Mrs. Kelley did not judicially confess in the judgment finding the church a one-half naked owners of the residence.

CONFLICT OF INTEREST
Attorney Spaht testified that he read the entire will to Mrs. Kelley and that she agreed to the usufruct and in giving the church a one-half interest in the naked ownership. He further stated that he did not think there was a conflict of interest in him representing all parties involved in the succession. Pretermitting that, the testimony revealed that upon reading the will he was aware of the "unusualness" of the will's provision.
In review of the entire record we find the trial court erred in finding that the reference in the will was not a prohibited substitution under LSA-C.C. 1520. We further find that the trial court erred in applying Williams and its effect relative to a judicial confession.
Therefore we reverse the trial court's judgment insofar as it recognizes the First Presbyterian Church of Baton Rouge as an undivided one-half owner in the decedent's Highland Rd. residence. We render judgment finding that Mrs. Hazel Lowe Kelley as the sole owner of the aforementioned residence at the time of the sale to her neighbor and further order that she be recognized as the sole owner of Certificate of Deposit No. 153759 in the amount of $33,000.00, on deposit with City National Bank of Baton Rouge, representing the church's one-half proceeds from the sale of the residence.
All costs of this appeal are assessed against the appellee.
REVERSED AND RENDERED.
SHORTESS, J., concurs in the result.