GONZALES, Judge.
On June 28, 1983, Mrs. Hazel Sumlin Vicaro and her husband, Mr. Carl Vicaro, executed statutory wills. These wills were drawn up by the -Vicaro family attorney of many years. The Vicaros had no children. In Mrs. Vicaro’s will, she divided her property equally between her family (the Sum-lin heirs) and her husband’s family (the Vicaro heirs), in the event that her husband predeceased her. This was in accordance with her husband’s wishes for the disposal of their property. Mr. Vicaro passed away two months after the wills were executed.
On October 20, 1985, Mrs. Vicaro wrote an olographic will, which expressly revoked all previous wills and left all of her possessions, assets and property to her sister, Mrs. Louise Briggs. This olographic will was written, signed and dated by Mrs. Vi-caro in the presence of two witnesses, who were both notaries. The Vicaro family attorney was unaware that Mrs. Vicaro had written a second will on her own. Some months later, Mrs. Vicaro contacted the Vicaro family attorney and told him she wanted to leave $25,000 to a close family friend. The attorney wrote a codicil, which Mrs. Vicaro signed. This codicil made reference to the 1983 will which the attorney had written.
On December 2, 1990, Mrs. Vicaro died in East Baton Rouge Parish. On February 1, 1991, a petition was presented to the 19th Judicial District Court by the Vicaro heirs requesting probate of the 1983 will and the codicil of May 15, 1986. On February 4, 1991, a petition to probate the olographic will of 1985 and the 1986 codicil was presented to the Court by Mrs. Briggs. This petition also requested that the court nullify the 1983 statutory will.
The matter was submitted to the court by joint stipulation on the record and affidavits.[1] The court made a final judgment holding the 1985 olographic will invalid and upholding the validity of the 1983 testamentary will and the 1986 codicil. A sus-pensive appeal was filed by Mrs. Briggs.
The first sentence of the 1985 olographic will states “I, Hazel S. Vicaro, being of sound mind and body, hereby make this my last will and testament, revoking all other wills previously made by me.” The last sentence of the olographic will states “Anything I may have written or declared in the past contrary to this will is null and void.” The 1986 codicil states:
*841 I, Mrs. Hazel Sumlin Vicaro, born Sum-lin, amend my Will of June 28, 1988 by the addition of the following:
I will and bequeath to my and my husband’s very good friend and advisor, Ed Campbell, the sum of TWENTY-FIVE THOUSAND AND NO/lOO ($25,-000.00) DOLLARS in cash to be paid at the time of my death, free of any inheritance taxes.
In all other respects my Will of June 28, 1983 is to remain the same.
Signed at Baton Rouge, Louisiana on this 15TH day of May, 1986.
The narrow legal issue before us is whether the wording of the 1986 codicil is sufficient to revoke the 1985 will and thus reinstate the 1983 will. Louisiana Civil Code article 1691 provides in part:
Testaments are revocable at the will of the testator until his decease. Prior to its amendment in 1987, Louisiana Civil Code article 1691 provided in pertinent part as follows:
The revocation of testaments by the act of the testator is express or tacit, general or particular.
It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition.
It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.
It is general when all the dispositions of a testament are revoked.
It is particular when it falls on some of the dispositions only, without touching the rest....
In Jones v. Mason, 234 La. 116, 99 So.2d 46, 48 (1958), multiple copies of one will surfaced after the decedent’s death. The court stated:
As we have said, the will in question— for there is only one will although duplicate originals of it exist — was entirely written, dated, and signed by the testator, and is valid in form as an olographic will. Since it has been proven to have been validly executed, the burden of proving revocation rests upon the opponents who assert revocation. See Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663 [(1901)]; Annotation, 165 A.L.R. 1188; 57 Am.Jur. 374, Wills, Sec. 541. (Emphasis added)
Louisiana Civil Code article 1588 provides:
The olographic testament is that which is written by the testator himself.
In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State.
The olographic will was introduced into evidence and an affidavit was filed into the record, signed by notaries Cyd Sheree Page and William F. Page Jr., stating that Mrs. Vicaro wrote, dated and signed the will in their presence. The olographic will having been thus proven to be validly executed, the burden of proving revocation rests upon the Vicaro heirs. The Vicaro heirs cite Succession of Moran, 479 So.2d 350 (La.1985) as authority for their position that the codicil revokes the 1985 will. The first Moran will, written in 1976, left some of the decedent’s real estate to her two nephews. A later codicil written by decedent left that same piece of property to someone else. The court found that the codicil constituted a tacit revocation of the earlier bequest in the will. The rest of the will was still valid. The Moran case simply holds that a subsequent disposition of property amends a prior disposition to the extent that the two are inconsistent. Mrs. Vicaro’s 1985 will and 1986 codicil are only inconsistent to the extent that the codicil donates $25,000 to Ed Campbell.
Mrs. Briggs argues that the language of the 1986 codicil, although referencing the 1983 will, is not sufficient to revoke the 1985 will. A case cited by Mrs. Briggs as support for her position is Succession of Barry, 188 So.2d 124 (La.App. 4th Cir.1966), reversed on other grounds, 250 La. 435, 196 So.2d 265 (1967). The Barry case is factually similar to the case sub judice. In Barry, the decedent executed a will on July 7, 1960, leaving everything to one group of people, then executed a second will on January 2, 1962, leaving *842 everything to a different set of people. The decedent then executed a codicil, dated January 15, 1962, which stated that it was a codicil to the first (1960) will. The first issue which faced the Court of Appeal was whether the second document had the necessary dispositive language to be a will. The court held that it did. The second issue was whether the second will revoked the first will. The court held that the second will revoked the first because they were totally inconsistent. The final issue was the one that faces this Court: what effect should be given the codicil which referred to the first will? The court stated “[I]t is our opinion that said instrument has reference to the latter will, as opposed to the former.” 188 So.2d at 127. The Louisiana Supreme Court reversed, on the grounds that the second will did not contain the necessary precatory language to be a testament. However, the Supreme Court did not criticize the Appellate Court’s analysis that the codicil would be found to refer to the second will and not the first, had the second will validly revoked' the first.
In the case sub judice, the codicil does not use the word “revoke.” It makes no reference at all to the 1985 will. We find that the words “In all other respects my will of June 18,1983 is to remain the same” are insufficient to revoke the 1985 will. Taken literally, for the 1983 will to remain the same, it remains revoked by the 1985 will. We find that the Vicaro heirs have failed to meet the burden of proof to show revocation of the 1985 will. To find that “remain the same” means “I hereby revoke my 1985 will and thereby reinstate my 1983 will” would require a strained and awkward interpretation of the language. We find that the trial court made a legal error in interpreting the codicil as revoking the 1985 will.
Therefore, for the foregoing reasons, we reverse the trial court in part; we find that the 1983 testamentary will is revoked and the 1985 olographic will is valid. We affirm the trial court in part; we find that the 1986 codicil is valid. The appellees are cast with the appeal costs.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. Our reading of the minutes of court indicates that this case was submitted to the trial court on June 21, 1991. On July 23, 1991, the appellant filed a peremptory exception of nonjoinder of indispensable parties. Louisiana Code of Civil Procedure article 928 provides in part:
B. The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision....
This peremptory exception was not timely filed in the trial court, was not considered by the trial judge, and is not properly before us on appeal.
On July 18, 1991, some of the Sumlin heirs filed a petition of intervention. Louisiana Code of Civil Procedure article 1033 provides in part:
An incidental demand may be filed without leave of court at any time up to and including the time the answer to the principal demand is filed. ,
An incidental demand may be filed thereafter, with leave of court....
This petition of intervention was filed after the answer to the main demand, without leave of court, and was not considered by the trial judge. It is not properly before us on appeal.
In addition, we note that the appellant filed a motion to strike appellee’s answer to appeal, alleging that the answer to appeal improperly raises an issue which is not before this court, namely the intervention. Because the intervention is not properly before this court, we have disregarded any argument concerning the merits of the intervention.